HANNAH C. SMITH, Administratrix, *vs.* WINONA & ST. PETER RAIL-
ROAD COMPANY.

## November 22, 1889.

**Master and Servant—Assumption of Risk.**—Rule reaffirmed that a serv-
ant assumes, not only the risks ordinarily incident to his occupation, but
also such extraordinary risks as he may knowingly and voluntarily en-
counter.

**Same—Brakeman Injured by Stone Pile near Track.**—A person em-
ployed as a brakeman on a section of four miles of railroad, and notified
that there were stone piles beside the road, and so near to it that a per-
son on the side of a car passing them would be struck, is to be deemed to
have assumed the risk from that cause, although the precise location of
the danger was not stated to him.

Appeal by plaintiff from an order of the district court for Blue
Earth county, *Severance*, J., presiding, setting aside a verdict of
$5,000 in her favor, and granting a new trial.

*P. A. Foster* and *Freeman & Pfau*, for appellant.

*Wilson & Bowers*, for respondent.

DICKINSON, J. This action is prosecuted under the statute to re-
cover for the death of the plaintiff's intestate, caused by the alleged
negligence of the defendant. The plaintiff secured a verdict, but the
court granted a new trial, assigning as one of the reasons therefor,
in effect, that he did not consider that the verdict was justified by
the evidence. From that order this appeal was taken. A part of
the defendant's line of railroad consists of a short section, extending
from the depot in the city of Mankato, north-easterly, less than four
miles, to a point on the main line called "Mankato Junction." About
one mile out from the Mankato depot, on this short section of road,
is a switch, and a spur or side track about 600 feet in length. This
side track is in the vicinity of and near a stone quarry, called "Saul-
paugh's quarry," as appears both from the pleadings and evidence,
and was used principally as a track where cars were left by the de-
fendant to be loaded with stone and brick; and from thence the
loaded cars were taken out by the defendant for transit over its road.
The stone quarry itself was not in sight from this switch, it being

some distance away, beyond or under a hill; but, at the time of the accident, over some two acres of the ground near the side track was scattered a good deal of stone, taken out from the quarries, and deposited there. There were also two piles of stone, which had been taken out of the Saulpaugh quarry, and piled on either side of the side track, nearly as high as a box-car, and extending some 30 or 40 feet along the track, and so near to it that a man on the side of a car passing the stone piles would be brought into contact with them. One Brown was the conductor of the trains that ran back and forth between Mankato and the junction. At one o'clock in the morning of the day of the accident, Brown employed the deceased, Smith, who had resided in Mankato for about a year, to work as a brakeman, in the night service, over this short section of road. The deceased professed to have been previously engaged in like service. Smith was to commence work at six o'clock in the evening of that day. Brown testified that when he employed Smith he warned him of the "bad places in the yard and stone quarries; * * * told him about the elevator,—that it wouldn't clear him on the top of a box-car; and I told him to look out for the chute at the stock-pen, and that there were stone piles in the quarries that wouldn't clear him, at the Saulpaugh and at the Craig quarries." Again, as Brown testified, when Smith came to enter upon his service, at six o'clock that night, he went with him about the yard, (depot grounds,) showing him the dangerous places there, and told him that the stone piles would not clear him, and that he should not go on the side of a car while going past them. Upon this point there was no opposing evidence. We see no reason to suppose that these piles of stone were, or that they were understood to be, merely temporary obstructions. Smith, entering upon his service that evening, went out to the junction with a passenger train, and returned to Mankato. The same crew then went out with a train of freight-cars, beyond the switch track, and, on the way back to Mankato with a train of freight-cars, the train was stopped, before reaching the switch, for the purpose of taking out a car loaded with brick from the side track, and of setting an empty car in on the same track. Brown had directed Smith to go to the rear of the train, and that he (Brown)

and another brakeman (Erickson) would get out the car of brick at the switch, and set an empty car in there.    The engine, being detached from the train, went in on the side track with an empty car, and coupled on the car loaded with brick.    As the engine was going out with these two cars from the side track to the main track, Smith, without being directed so to do, came across from the train of cars standing on the main track, and was climbing up a side ladder on one of the two cars, then moving about four or five miles an hour, when, in passing one of the stone piles, he was swept off and instantly killed.    This was after nine o'clock at night.    A strong case of negligence on the part of the defendant is here presented, and it was not for insufficiency of proof of that fact that a new trial was allowed.

It is probable that the insufficiency of the evidence upon which the granting of a new trial was based was with respect to the point as to whether the deceased had not been so warned of this danger when he was employed for this service that he must be deemed to have voluntarily assumed the risk.    We might rest our decision affirming the order of the court below upon the rule laid down in *Hicks* v. *Stone*, 13 Minn. 398, (434,) deciding, as we do, that the evidence does not so clearly and palpably support the verdict that the order of the trial court should be reversed; but, in view of another trial, it is expedient that we express our opinion somewhat further upon this feature of the case.

It is contended on the part of the plaintiff that the notice of the danger from the stone piles was insufficient to cast upon the servant the extraordinary risk from that cause, for the reason that Brown referred to the stone piles as being at Saulpaugh's quarry, when in fact, as it is claimed, they were not at the quarry; and, further, because even the location of the quarry was not defined by Brown.    It is too well settled by the decisions of this court, in accordance with the law as it has been generally declared. to be now questioned, that in general a servant assumes, not only the risks ordinarily incident to his occupation, but such extraordinary risks as he may knowingly and voluntarily encounter.    *Fleming* v. *St. Paul & Duluth R. Co.*, 27 Minn. 111, (6 N. W. Rep. 448;)  *Hughes* v. *Winona & St. Peter R. Co.*, 27 Minn. 137, (6 N. W. Rep. 553;  *Clark* v. *St. Paul & Sioux City R.*

*Co.*, 28 Minn. 128, (9 N. W. Rep. 581;) *Greene* v. *Minn. & St. Louis Ry. Co.*, 31 Minn. 248, (17 N. W. Rep. 378;) *Sherman* v. *Chicago, Mil. & St. Paul Ry. Co.*, 34 Minn. 259, (25 N. W. Rep. 593;) *Cook* v. *St. Paul, M. & M. Ry. Co.*, 34 Minn. 45, (24 N. W. Rep. 311;) *Wilson* v. *Winona & St. Peter R. Co.*, 37 Minn. 326, (33 N. W. Rep. 908.) See, also, note and cases cited, 77 Am. Dec. 222. The terms in which we have stated the general proposition suggest the distinction which has been recognized as to those who, from infancy or from other causes, may be incapable of appreciating a danger, of the existence of which they may be informed. Nor perhaps is it to be asserted without qualification that, if a servant unexpectedly encounters an extraordinary danger, not incident to his service, and of which he had not been apprised, but goes on with the discharge of his present duty in the face of such danger, that he does so at his peril; that he voluntarily assumes the risk. Cooley, Torts, 555. But no such exceptional conditions are presented in this case. If the testimony of Brown is to be believed, the deceased was notified at the time of his employment of the very danger which is the ground of this action. It is not clear from the evidence that Brown informed him so particularly as to the location of these stone piles that the deceased must be deemed to have known that they were located at this side track. It does not appear that the deceased knew where the Saulpaugh quarry was. But notice of the precise *nature* of this danger was involved in the warning which, according to Brown's testimony, was given to him. If such notice was given, he must have understood the nature and extent of the peril, and that this danger was one which he was likely to encounter as a brakeman on this line of less than four miles of road. Under such circumstances the deceased, even though he was not informed as to the precise location of the danger, must be regarded as having voluntarily assumed the risk. We see no way to avoid this conclusion consistently with the rule of law as to assumption of the risk of the known dangers of the service.

Order affirmed.

NOTE. A motion for a reargument of this case was denied January 14, 1890.