Dissenting Opinion.
Ross, J.
I am unable to concur in the opinion of the majority in holding that the complaint states a cause of action. The majority opinion says that appellant’s contention simply relates to the sufficiency of the complaint as alleging negligence against appellant and want of negligence on the part of the appellee. Even were I to admit that appellant’s counsel simply insist that the complaint is insufficient because it fails to sufficiently allege negligence on appellant’s part, and want of negligence on the part of appellee, I am still of the opinion that the facts alleged fail to show .culpable negligence on appellant’s part, and do show that appellee was either guilty of contributory negligence, or that his injury was the result of a risk assumed. But I think counsel go further and insist that the mere promise to repair is not sufficient to create the exception to the general rule, which is that a servant who continues to use defective machinery, after he knows of its defective condition, assumes the extra hazard occasioned by the defect.
Counsel in their brief say: “The paragraph then pro *140 ceeds to allege that the plaintiff complained of the condition of the machinery described, and that the defendant promised to repair it and then negligently and carelessly failed to keep this promise. We maintain that it is not enough to allege negligence and carelessness in not keeping a promise to repair. * * * The averments should simply have been that the machinery was not repaired within a reasonable time.”
As a rule of pleading, the facts alleged must be such as will warrant the court in declaring as a question of law that the defendant was guilty of culpable negligence.
‘ ‘We suppose it to be clear that when a plaintiff charges a defendant with a negligent breach of duty, he must state facts from which actionable negligence can be inferred, for the general rule is that negligence can not be presumed. This general rule is uniformly applied to employers and employes, and it is presumed that the employer has done his duty. This presumption is, in effect, a prima facie case in favor of the employer. To defeat this presumption of duty performed, it is necessary to state facts rebutting the presumption, otherwise there can be no cause of action. A violation of duty must, therefore be shown, otherwise the complaint must be judged to be bad. This is so because culpable negligence can not be presumed in aid of a complaint. ’ ’ Brazil Block Goal Co. v. Young, 117 Ind. 520.
A servant, when he engages in the master’s service, is presumed to understand the nature and hazard of the employment, and assumes all the ordinary risks and obvious perils incident thereto. The risks thus assumed are such as arise from the service to be performed, whether from the use of certain machinery or from working in a particular place. They are assumed the same, whether they arise from the use of defective machinery or an unsafe place to work, if known to the servant, *141 as if arising from reasonably safe machinery or a reasonably safe working place. Atlas Engine Works v. Randall, 100 Ind. 293.
All known dangers, whether from defective tools, machinery and appliances, or the unsafe condition of the working place, are incident to the particular work connected with their use, hence are assumed by one engaging to work with them. Huddleston v. Lowell Machine Shop, 106 Mass. 282; Naylor v. Chicago, etc., R. W. Co., 53 Wis. 661.
It is only the known dangers which are so regarded, for the servant is not compelled to seek for latent defects but may rely upon the assumption that the master has furnished machinery, tools, and appliances, as well as a place to work, which are free from latent defects; in other words, that the master has used reasonable care to see that no latent defects exist.
“When a servant enters upon an employment which he knows is hazardous, either by reason of the nature of the employment, or because of defective or otherwise dangerous appliances, he may well be said to assume this risk. Knowing when he solicits and accepts the employment, that if it is given him he must use defective tools, he contracts to take that as one of the risks of the service. Whether anything is said of the dangerous character of the employment, or of the defective and dangerous appliances or not, if the dangers and defects are of such character that they are equally known to or open to the observation of both employer and employe, it can well and justly be said they stand on a common footing. Acceptance of the employment is an acceptance of the attendant risk. ” Brazil Block Coal Co. v. Hoodlet, 129 Ind. 327.
And, as the Supreme Court of Ohio, in the case of Columbus, etc., R. R. Co. v. Webb’s Admx., 12 Ohio St. 475, says: *142 “Whether the employe seek employment in a machine-shop, or on board a steamboat, upon a railroad train, or to pilot rafts over dangerous rapids, to labor in a powder mill, or to serve upon a whale ship, or upon a voyage of discovery in the Arctic regions; in each and all of the several employments and positions chosen, the employe, by entering the service voluntarily, takes upon himself the hazard and dangers properly incident to the service in which he engages; and the employer is in no sense, from the relation they so sustain to each other, a warrantor of the safety of the employe.”
Not only does the servant assume the risks naturally arising from, the employment, biit he also assumes such extraordinary risks as he may knowingly and voluntarily encounter. Smith v. Winona, etc., R. R. Co., 42 Minn. 87, and cases cited.
But where the servant is sent by the master into dangerous places, to work with defective tools, machinery and appliances, or put to dangerous tasks, of the risks of which he is ignorant, it is the duty of the master to-give him notice and put him on his guard, so that he may protect himself from injury.
In the case of Michigan Central R. R. Co. v. Smithson, 45 Mich. 212, a leading case in this country, Cooley, J., speaking for the court, says: “No railroad' company, and no manufacturing or business establishment of any kind, is bound at its peril to make use only of the best implements, the best machinery and the safest methods. The State does not require it; and .could not require it, without keeping such minute and constant supervision of private affairs, and interfering with such frequency as under all circumstances would be irritating and damaging, and in many cases would become intolerable. In the main the State must leave every man to manage his own business in his own way. If his way *143 is not the best, but nevertheless others, with a full knowledge of what his way is, see fit to cooperate with him in it, the State can not interfere to prevent, nor punish him in damages when the risks his servants voluntarily assume are followed by injuries.”
The true rule as we gather it from the adjudicated cases is that a master may use defective and unsafe machinery, tools and appliances in the operation of his business, and those who engage in his service knowing of their defective and unsafe condition, or such defects and unsafeness being open and obvious, assumes the risks incident to their use in such condition. But when the defects or unsafeness is latent and unknown, his assumption of risks is only of such as are incident to their use in their Apparent condition. So ' if they appear to be reasonably safe and free from defects the servant may assume that they are so, and he has a right to rely upon such assumption. The presumption is that the master has performed his duty, and that the machinery, tools and appliances with which the servant is to work are as they appear, and to that extent reasonably safe and suitable for that purpose. The servant has no right to assume that they are safe and suitable if they appear otherwise, for if he undertakes to use them he is presumed to know their condition, so far as it is patent, and to have contracted accordingly, hence if injury befalls him by reason of such defects as were open and visible when he accepted employment, he can not recover therefor, because that was one of the incidents of the service. Where the servant enters into the service of. a master knowing that the machinery with which he is to work is unnecessarily dangerous because of its defective condition, he is prima facie presumed to know the dangers incident to its use, and he assumes the risks incident to its use in that condition.
*144 “It is for those who enter into the employments of a dangerous character, or who work at dangerous places, to exercise all that care and caution which the nature of the employment or the situation in which they are employed demands.” Cincinnati, etc., R. W. Co. v. Long, Admr., 112 Ind. 166.
If the machinery, tools and appliances, or the working place become defective and unsafe for use after his entry into the service, and he knows of their defective and unsafe condition, and remains in the master’s service continuing to use them, he thereby assumes the extra hazard occasioned by such defect. Parke County Coal Co. v. Barth, 5 Ind. App. 159; Becker v. Baumgartner, 5 Ind. App. 576; Kentucky and Indiana Bridge Co. v. Eastman, 7 Ind. App. 514; Umback v. Lake Shore, etc., R. W. Co., 83 Ind. 191; Lake Shore, etc., R. W. Co. v. Stupak, 108 Ind. 1; Indiana, etc., R. W. Co. v. Dailey, 110 Ind. 75; Indianapolis, etc., R. W. Co. v. Watson, 114 Ind. 20; Louisville, etc., R. W. Co. v. Sandford, Admx., 117 Ind. 265; Brazil Block Coal Co. v. Young, 117 Ind. 520; Pennsylvania Co. v. O’Shaughnessy, Admr., 122 Ind. 588; Rogers v. Leyden, 127 Ind. 50; Evansville, etc., R. R. Co. v. Duel, 134 Ind. 156; Ames, Admr., v. Lake Shore, etc., R. W. Co., 135 Ind. 363.
“If the danger is known and the servant chooses to remain, he assumes, it would seem, the risk and can not recover. He might leave if he chose, but, choosing to remain, he can not remain at the risk of the master. Every employer has a right to judge for himself how he will carry on his business, and workmen having knowledge of the circumstances must judge for themselves whether they will enter his service, or, having entered, whether they will remain.” Buzzell v. Laconia Mfg. Co., 48 Me. 113.
And the Supreme Court of Massachusetts, in a recent *145 •case, says: “It is a familiar principle, that, if a servant, capable of contracting for himself, and with full notice of the risk he may run, undertakes a hazardous employment, or to put himself in a hazardous position, or to work with defective tools or appliances, no liability is incurred by the master for injuries received from these hazards.” Hatt v. Nay, 144 Mass. 186, and cases cited.
“The employe has a right, until he acquires knowledge of danger, to act upon the assumption that his employer will use ordinary care to provide safe appliances; but when he becomes fully informed of the danger, he can no longer act upon this assumption. Knowledge puts, an end to his right to assume that the master has done his duty.” Indianapolis, etc., R. W. Co. v. Watson, supra.
It is well settled, as a general rule, that while the servant assumes the extra hazard occasioned from known defects, there is an exception to the rule, and with the exception we have to deal in this case. The exception is where the means or appliances are defective and the servant has complained of them, and the master, in answer to such complaints, has promised to make them safe, and the servant relying upon such promise and believing that they have been made safe, continues in the master’s employment and to use such means and appliances without having made an inspection to see that the defect has been remedied. The mere fact of the promise will not, ,as matter of law, entitle the employe to recover.
In the case of Gowen v. Harley, 56 Fed. Rep. 973, the court, in speaking of this exception to the general rule, says: “To the last rule there is this exception: If a servant who is aware of a defect in the instruments with which he is furnished notifies the master of such defect, .and is induced, by the promise of the latter to remedy it, *146 to remain in the service, he does not thereafter assume the risk from such defect until after the master has had a reasonable time to repair it, unless the defect renders the service so imminently dangerous that no prudent person would continue in it.”
Judge Wharton, in his work on Negligence (2d ed.), section 220, speaking of the exception, says: “The only ground on which the exception before us can be justified is that in the ordinary course of events the employe, supposing the employer has righted matters, goes on with his work without noticing the continuance of the defect.”
‘ ‘A servant can not continue to use a machine he knows to be dangerous, at the risk of his employer,” says Pollock, C. B., in Dynen v. Leach, 40 Eng. Law and Eq. 491.
Society has an interest in the lives of all its members, and no one has a right to voluntarily cast himself in the way of a known danger.
In actions of this character where an employe seeks to recover damages from his employer for injuries received while in the discharge of his duties, on account of defective machinery, one of two questions ordinarily arises relative to the employe himself, namely:
1st. Was he guilty of contributory negligence?
2d. Was the injury the result of the risk which he assumed?
If he contributed to his own injury, the law affords him no relief, neither can he recover if the injury is the result of a hazard naturally incident to the service.
To determine which of these questions arises under a given state of facts is not always easy of solution. In most of the adjudicated cases no distinction has apparently been drawn between these two classes of cases, and for that reason general rules of law have been an *147 nounced, which, although correctly stated, have no application to the place under consideration. Some courts say that if an employe continues to use defective machinery, knowing its condition, and is injured, he is guilty of contributory negligence; others, however, hold that that is not a question of contributory negligence, but rather whether or not by continuing to use it he assumed the risk. The distinction is forcibly stated in Beach on Con. Neg., section 139, as follows: “Assuming the risks of an employment is one thing, and quite an essentially different thing from incurring an injury through contributory negligence. It is not contributory negligence per se to engage in a dangerous occupation. Men may properly and lawfully do work that is essentially dangerous work, or work that is, for some reason or another, more than ordinarily dangerous for the time being, and to contract to do such work is not, in itself, an act of negligence.”
A servant may, therefore, know that his work is more than ordinarily dangerous on account of defects in the machinery which he is to use, or the unsafe condition of the place where he is to work, and yet he is not guilty of contributory negligence in doing it. Contributory negligence does not consist in undertaking to do a thing known to be dangerous, but having undertaken it, in failing to use every reasonable precaution to avoid being injured while performing the work.
While it may be almost certain death for a fireman to go into a burning building in an attempt to save life or property, yet if he knows the danger, and accepts the employment, and in the performance of that duty is injured, his right of recovery is not barred because of his contributory negligence, for he may have exercised the highest possible degree of care, but he is barred because the injury was the result of one of the risks assumed by *148 him. The same may be said with reference to many employments, in the performance of the duties of which the danger is imminent and continuous.
From the facts alleged in the complaint under consideration, it is evident that the defect complained of was open and apparent, and to use the machine in that condition as dangerous at the time appellee was using it, and was injured, as it was when he complained of its condition, and appellant made the promise to repair, the question then arises: Had the appellee a right to close his eyes to the known danger, and assume that he would not be injured simply because the appellant had promised to repair the defect? In other words, can an employe knowingly cast himself in the way of danger, and in the event he is injured, hold his employer answerable therefor, because the employer had promised to remove the danger?
An employe can not encounter a known danger voluntarily, and, if injured, hold his employer to account therefor. Meador v. Lake Shore, etc., R. W. Co., 138 Ind. 290.
It is an old and settled rule of the common law that none can maintain an action for an injury where he has consented or contributed to the act which occasioned it. To him applies the maxim u volenti non jit injuria.”
It is firmly settled in this State that in an action brought by an employe against an employer to recover for injuries received on account of defective machinery, the plaintiff shall allege and prove knowledge on the part of the defendant and want of knowledge on his part of the defect complained of. Kentucky and Indiana Bridge Co. v. Eastman, supra; Evansville, etc., R. R. Co. v. Duel, supra, and cases cited.
As heretofore stated, there is an exception to this general rule requiring the employe to show that he had no *149 knowledge of the defect which caused the injury, when the facts, show that he did know of it and complained to his employer and was induced to continue in the service under a promise to remedy the defect. But the facts alleged must be clear and explicit in order to create the exception. They must in themselves create the exception in order to warrant the court in holding that he did continue in the service at the risk of the employer and not at his own risk. The rule absolving the servant from the risk is an exception to the general rule, and to create it facts must be averred showing not only that the master promised to repair, but that the promise was made within a reasonable time prior to the injury, and that the danger from using the machinery in its defective condition was not great or imminent. These are the facts which create the exception, and in order to take the case out of the operation of the general rule these facts must be specially averred, otherwise the general rule must prevail.
When a master lulls his servant into a feeling of security by promising to repair defective machinery, and the servant, ignorant of the failure to repair, uses it in its defective condition and is injured without fault on' his part, the master is liable.
It is here alleged that the belt and pulley which operated to raise the crosshead were out of repair, worn and insufficient for that purpose; that the appellee was acquainted with its defective condition, and that it was dangerous to operate it in that condition; that appellee, from time to time until February 20, 1890, the day he was injured, notified appellant of its condition, and appellant promised to repair it, but appellant failed and neglected to do so; that he continued to use it, knowing the repairs had not been made, and on account of its defective condition was injured.
*150 When appellee alleged that he had complained to the appellant of the dangerous condition of the belt and pulleys, he confessed his knowledge of their defective and dangerous condition, hence the legal presumption arises that if he continued to use them in that condition he assumed the risks incident thereto.
The pivotal question then is: Do the facts alleged create the exception to this general rule?
When a master is notified by his servant of the unsafe or defective condition of the machinery which he has furnished such servant with which to work, it is his duty to make the repairs within a reasonable time, and the servant, unless he can see that the repairs have not been made, has a right to assume, after the lapse of a reasonable time, that the repairs have been made safe. But if the servant remaining in the service continues to use defective machinery, after a reasonable time for making the repairs has elapsed, knowing it has not been repaired, and is then injured on account of the defective condition of the machinery, he can not recover. 14 Am. & Eng. Encyc. of Law, page 356, paragraph 13, and cases cited. And when a servant continues to use the machinery, which he has complained of to his master as being defective and which the master has promised to repair, during the reasonable time allowed the master to make such repairs, if the defect is so glaring and the danger from its use in that condition such that a man of common prudence would not use it, by such continued use he assumes the extra hazard incident thereto, and can not recover for any injury resulting therefrom. Indianapolis, etc., R. W. Co. v. Watson, 114 Ind. 20; Conroy v. Vulcan Iron Works, 62 Mo. 35.
Appellee avers in his complaint that he notified appellant and that appellant promised to make the repairs. It is not averred when the notice was given or the prom *151 ise made. To allege that from time to time until the day he was injured he notified the appellant does not advise the court of the time when the notice was given. The right of appellee to recover depends upon the statement of facts, which create an exception to the general rule which we have stated, and in order to do so the facts stated must be such as will warrant the court in inferring negligence.
This is necessary because the law presumes that the master has done his duty, and this presumption must be overcome by the statement of such facts as will show a breach of such duty. Pennsylvania Co. v. Whitcomb, Admr., 111 Ind. 212, and cases cited.
In order that appellee’s complaint state a cause of action, it is necessary that the facts alleged overcome two presumptions which naturally arise against him and in favor of the appellant, namely: first, that the appellant was mindful of its duty and performed it, and second, that the appellee, knowing the defective and dangerous condition of the machinery, by continuing to use it assumed the risk.
If the facts alleged fail to overcome either of these presumptions, no cause of action is stated.
In Indianapolis, etc., R. W. Co. v. Watson, supra, Elliott, C. J., in speaking for the court, says: “Where there is a promise to repair which induces the employe to continue in the service, then, doubtless, he may, for a reasonable length of time, rely on the promise and continue in the service, unless the danger of continuance, without a removal of the cause of it, is so great that a reasonably prudent man would not assume it. Hough v. Railway Co., 100 U. S. 213; Loonam v. Brockway, 3 Rob. (N. Y.) 74; Illinois Central R. R. Co. v. Jewell, 46 Ill. 99; Crichton v. Keir, 1 C. Sess. case (third series) 407.
*152 “Some of the cases go farther and assert that the promise of the employer exonerates the employe entirely, even though the continuance in the service is known to him to be constantly and immediately dangerous. Fort Wayne, etc., R. R. Co. v. Gildersleeve, 33 Mich. 133. We are not inclined to adopt this view. Our opinion is, that if the service can not be continued without constant and immediate danger, and the danger and its character are fully known to the employe, he assumes the risk if he continues in the service. It is a fundamental principle in this branch of jurisprudence, thatone who voluntarily incurs a known and immediate danger is guilty of contributory negligence, and we are unable to perceive why a promise should relieve the party injured through his own contributory fault. If the danger is not great and constant, then such a promise may well * relieve him; but where it is great and immediate, and is of such a nature that a prudent man would not voluntarily incur it, a promise does not nullify or excuse the contributory negligence. Even if there be a promise by the employer, the employe must not subject himself to a great and evident danger, since this he can not do without participating in the employe’s fault. The community have an interest in such questions, and that interest requires that all persons should use ordinary care to protect themselves from known and certain danger. A man who brings about his own death or serious bodily injury sins against the public weal. All must use ordinary care to avoid known and immediate danger, although it is not the • assumption of every risk that violates this rule. When the line of danger, direct and certain, is reached, there the citizen must stop, and he can not pass it, even upon the faith of another’s promise, if to pass it requires a hazard that no prudent man would incur.” See, also, Conroy v. Vulcan Iron Works, supra. The- *153 court in the above case has expressly declared that when danger is imminent it is contributory negligence on the part of the servant to encounter it, even though the master has promised to remove the danger.
I think the learned judge delivering the opinion in ■that case failed to make the proper distinction, for lie, in effect, says that it is contributory negligence for an employe to undertake to perform work when the attendant danger is great or imminent. A man may be employed to descend into the depths of the earth to rescue a fellow-man overcome from damp gas in a coal mine; he may know that to do so subjects him to the greatest peril, and that the danger is so great and imminent that he is the only man who is willing to undertake the task and run the risk, and yet can it be said that he is guilty of contributory negligence simply because he is willing to risk his life in order to save that of a fellow-man? True if we apply the rule that an ordinarily prudent man would not undertake it, we know that judging from what the average man, taken from the ordinary walks of life (the merchant, mechanic, farmer or day laborer), would do, they would not undertake it; nevertheless I do not hesitate to assert that any man whose courage is such that he is willing to brave any danger to save the life of his fellow-man, will not be declared by any court to have been negligent in doing so. To face such a danger is not contributory negligence, but the party undertaking it assumes the risk.
If, however, we accept the other theory, that the servant can not be said to assume the risk by continuing to work with defective machinery under promise of the master to repair, yet he is guilty of contributory negligence if he continues such use when the danger is imminent. True the master is negligent in that he fails to remove the defect as promised, and thus lessen the dan *154 ger to the servant, but the servant is equally negligent if he continues to use machinery which he knows, from its defective condition, will injure him. The negligence which entitles him to recover must be exclusively the master’s, and if he contributed thereto he has no right of action. When it is not contributory negligence for the servant to knowingly use defective machinery from the use of which, in that condition, he may assume that injury will not probably result, negligence can not be imputed to the master for failing to repair it. The master is not bound to furnish absolutely safe machinery, but is only to furnish such machinery as is reasonably safe. .When it is reasonably safe, the master has done his duty, and the risk of injury then belongs to the servant. If the machinery becomes unsafe and dangerous by reason of defects, the duty of both master and servant are equal, the one to repair and make it reasonably safe, and the other not to use it until such repairs are made. The promise of the master does not mislead the servant unless he is ignorant of the failure to keep it. By such a promise no duty is imposed upon the master of exercising a greater degree of care for the servant’s safety than the servant himself is bound to exercise for his own protection. In fact no man is ordinarily prudent who does not exercise a greater degree of care for his own protection than the law exacts, from another for his benefit.
Following these and the many other adjudications, I think that a complaint to recover for an injury received on account of defective machinery known to be defective by the servant, is not sufficient unless it is alleged not only that the master promised within a reasonable time prior to the injury to remedy the defect complained of, but that from the continued use of the machinery in its defective condition there was no probable or imminent *155 Ranger. For if, in sucli condition, that with the utmost skill and care danger was still imminent to one using it, and a servant continued to use it in that condition, he can not be said to be ordinarily prudent.
No prudent man will knowingly place himself in the way of danger.
When the facts alleged show knowledge on the part of' the plaintiff of the defects complained of, the law presumes he was negligent if he continued its use in that condition, and the burden, as heretofore stated, was upon him to show that the danger from its use in that condition was not great or imminent. The facts alleged fail to make such a case.
The demurrer should have been sustained to each paragraph of the complaint.
Filed Nov. 20, 1894.