## Moore, Administrator v. Chesapeake & Ohio Railway Company.

(Decided February 16, 1926.)

### Appeal from Pike Circuit Court.

Master and Servant—Railroad Yardmaster, Falling Over Pier of Bridge at Night, Held to have Assumed Risk of Insufficient Guard of which he Knew.—In action under Federal Employers' Liability Act (U. S. Comp. Stats., sections 8637-8665), railroad yardmaster, engaged in interstate commerce, killed in fall over the pier of a bridge on premises on foggy night, held to have assumed risk of any insufficient protection or guard at bridge of which he knew and did not complain.

MOORE & CHILDERS and GEORGE B. MARTIN for appellant.

KIRK, KIRK & WELLS, STRATTON & STEPHENSON and BROWNING & REED for appellee.

Opinion of the Court by Commissioner Hobson—
Affirming.

J. A. Davis, Jr., was one of the yard masters in the
yard of the C. & O. Railway Company at Shelby, Ken-
tucky. His hours of duty began at ten o'clock p. m. and
ended at six o'clock a. m. Near the lower end of the
yard the main line of the railway crosses Shelby creek
over a bridge fifty feet in length, each end of which rests
upon piers forty-five feet in height. About sixty feet
east of the bridge a lead track is put in, which runs out
into the yard connecting with the yard tracks, seven in
number. About four o'clock a. m. on October 26, 1922,
a freight train came in. Davis, as his custom was, took
the yard crew and went down the main line to meet this
incoming train and to do the work of breaking up the
train. They came down from his office about 2,000 feet
east of the bridge on a yard engine and when the engine
reached a point about a hundred feet from the bridge it
stopped and they got off. The incoming train was com-
posed of 106 coal cars, one loaded box car and a caboose.
The switch was thrown and the freight train was turned
into the yard at the lead track. It came to a halt, leaving
the loaded box car and caboose, which were in the rear of
the coal cars standing on the bridge. It was an unusually
dark and foggy night. Davis, after getting down off
the engine, walked along on the south side of the track
with a lantern in his hand, which he held up as though
looking at the side of the car, possibly to get the number
of the car he wanted. While he was walking along in
this way in the dark he, without knowing it, came to the
pier of the bridge and fell over the pier to the bottom, 45
feet, and was killed in the fall. This action was brought
against the railway company to recover for his death on
the ground that the railway company failed to furnish
him a safe place to work. The railway company de-
fended on the ground that he knew the situation and as-
sumed the risk. At the conclusion of the evidence the cir-
cuit court instructed the jury peremptorily to find for
the defendant. The administrator appeals.

The evidence satisfactorily shows that Davis was
well acquainted with the ground. He had not only been
shown over it when he took the position but had been at
work there for two months and knew all about it. His
death was due to his forgetting in the dark how near he

was to the bridge. The fact was that on the north side of the bridge the company had constructed a sidewalk over the bridge, which the employees were to use when they had occasion to cross it. There was no sidewalk on the south side, the track was on a fill, the ties came out nearly to the edge of the fill, and the company had constructed there a guard by a plank six inches wide nailed to the crosstie of the railway and extending out to the fence post. This plank was something over three feet high at the outer end, but not over a foot from the ground at the lower end. What happened was that Davis walked against the plank and fell over the pier head foremost. It was an inadequate protection, though to have made it higher would have been to have put it where the passing engines would strike it. So the whole case comes down to the question of assumed risk, for Davis well knew of the walk on the other side and also knew the kind of guard that was there on the south side. The action was brought under the federal statute as Davis was engaged in interstate commerce. It is therefore to be decided according to the rule laid down by the United States Supreme Court in such cases. In Jacobs v. Southern Railway Co., 241 U. S. 229, a railway fireman who stumbled in the dark over a pile of cinders between the tracks and fell in front of a moving train on another track, when attempting to board a moving engine with a can of drinking water in his hands, sued to recover for his injuries on the ground that he was not furnished a reasonably safe place to work, but the court held that he assumed the risk. Denying a recovery it said:

> "He admitted a knowledge of the 'material conditions,' and it would be going very far to say that a fireman of an engine who knew of the custom of depositing cinders between the tracks, knew of their existence, and who attempted to mount an engine with a vessel of water in his hands holding 'not over a gallon,' could be considered as not having appreciated the danger and assumed the risk of the situation because he had forgotten their existence at the time and did not notice them. We think his situation brought him within the rule of the case, Gila Valley G. & N. R. Co. v. Hall, 232 U. S. 94, 102, 58 L. ed. 521, 34 Sup. Ct. Rep. 229."

In Southern Pacific Co. v. Berkshire, 254 U. S. 415, a railway engineer was struck by a mail crane as he

leaned out of the cab.    Holding that he could not recover
the court said:

> "But, further, we must take it, as we have said,
> that Linder perfectly well knew of the existence of
> the crane where it stood, and could have seen it from
> his seat had he looked, long before he reached it.
> He entered the employment of the railroad when it
> had this appliance manifest in its place.    The only
> element of danger that he may not have appreciated
> was the precise distance which the point of the crane
> would reach.    But an experienced railroad man can-
> not be supposed to have been ignorant that such a
> projection threatened danger, and, knowing so much,
> he assumed the risk that obviously would attend tak-
> ing the chances of leaning well out from the train."

These cases and those there followed are conclusive
that there can be no recovery here.    In 18 R. C. L., p.
687, the general rule is thus stated:

> "It may be stated as a general rule that an em-
> ployee is duly bound to inform himself by all reason-
> able means concerning the perils of his employment.
> He must exercise his intelligence, and when a situa-
> tion suggests investigation and inspection in order
> that its dangers may fully be disclosed he is under
> the obligation of investigating and inspecting.    The
> master has a right to expect him to be alert to inform
> himself of existing conditions, and he cannot attack
> the master from the shelter of unjustifiable ignor-
> ance of the business, machinery and methods which
> he is employed to use."

Where the employee knowing the risk complains and
is promised that it will be remedied, a different rule ap-
plies.    But where he knows the risk and does not com-
plain he assents to act under existing conditions and can-
not complain of the master's nonaction.    Here Davis was
the master's representative in charge of the yard and if
there was a dangerous condition, it was incumbent on
him to complain.    This he did not do.

Judgment affirmed.