## MILLER v. WESTERN PAC. R. CO.

No. 4655.   Decided January 2, 1929.   (274 P. 945.)

443

*Willard Hanson* and *A. H. Hougaard,* both of Salt Lake City, for appellant.

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for respondent.

THURMAN, C. J.

Plaintiff, the conductor of a freight train operated by the defendant railroad company in the state of California, was seriously injured by stepping from the steps of the caboose attached to said train while the same was standing on a bridge near the station of Omira. In stepping from the

caboose, plaintiff was precipitated to the ground beneath the bridge, a distance of approximately 18 feet. He brought this action to recover damages for the injury sustained, and as grounds therefor alleged that defendant negligently and carelessly constructed said bridge only the width of the railroad track so that a person stepping from a car or caboose could not step upon a board or platform or other secure footing, but would be thrown and fall to the ground, a distance of approximately 18 feet. In the complaint it was also alleged that, while the construction and maintenance of said bridge was well known to the defendant, the same was not known to plaintiff. At the time of the accident the defendant was engaged in interstate business.

Defendant by its answer admitted that plaintiff was conductor of the freight train in question; that he stepped from the caboose and fell to the ground as alleged, and thereby received personal injuries, the extent of which was to defendant unknown. Defendant also admitted that no board walk or handrail was constructed or maintained beyond the sides of the train, where the same passes over said bridge. Defendant denied generally every other allegation of the complaint, and affirmatively alleged plaintiff's contributory negligence and assumption of the risk.

The uncontradicted evidence discloses that plaintiff had been employed on defendant's railroad either as a brakeman or a conductor from 1915 to the time of the accident in 1926; that there were many bridges or trestles constructed and maintained on the road upon which plaintiff operated during the course of his employment; that a few of these bridges, approximately one-tenth, were provided with board walks and handrails constructed along the bridges, some on one side, and some on both sides, so as to leave a narrow board walk between the train and the handrail. The accident in question occurred on the fourth division of the road which extended from Portola to Garboch, and upon which is situated the town of Omira. The bridge from which the plaintiff fell was approximately one mile

west of Omira. There was another bridge between that and Omira provided with board walk and handrail. Plaintiff had orders to take the siding at Omira for a westbound train. Omira was a regular inspection point, and also a place for taking water. Plaintiff, in the course of his employment, had made many hundreds of trips over the road, either as brakeman or conductor, and knew that a few of the bridges were provided with board walks and handrails, and that the others were not. There were 80 bridges on the fourth division, only 6 of which were provided with board walks and handrails. The train from which plaintiff stepped consisted of 99 freight cars, the engine, and caboose. Plaintiff testified it was the first time he had driven a 99-car train over the road going east; that, when the train stopped to take the siding at Omira, the caboose was standing on the bridge; that he and three brakemen were in the caboose, and at that point he saw an order board at Omira, about a mile distant, and the reflection of the big red light that stood about 40 feet in the air; that his duties at Omira were to get off the train and to the office as quickly as he could, get the orders, and let the other train out; that he got his lantern, which was in good condition, and went out at the east door of the caboose, got down on the steps in the usual manner of getting off a caboose; that about the only way one can get off is to turn around and back off; that the step was iron, about 1 foot wide, and 20 inches long. Plaintiff testified that he looked down at the ground, and it looked like he was stepping off onto a fill, "so after looking I naturally let go and dropped to the bottom of the bridge." Such is the substance of plaintiff's testimony concerning the happening of the accident.

Arnell, a witness for plaintiff and brakeman on the train, testified that plaintiff went through the east end of the caboose; that he followed plaintiff about 3 feet behind; that as he and plaintiff walked out of the door plaintiff turned to the right and got off the caboose in the usual manner

until he was about halfway down, and then dropped out of sight; that witness stood for a second, then went back through the caboose, got the other two men and got off the rear end of the caboose, and went down to where plaintiff was lying, about 18 feet below the caboose; that he realized when plaintiff fell he had fallen from a bridge; that the accident occurred between 2 and 3 o'clock in the morning; that witness had never worked before on a 99-car train going east from Portola; that he had worked on trains going west; that he had to walk over this bridge many times when flagging trains; that he knew it was not provided with board walks or handrails; that the bridge from which plaintiff fell was of the same construction as the other bridges on the road that were not provided with foot walks and handrails; that plaintiff's lantern was burning brightly, and witness knew of nothing that would have prevented plaintiff from casting the rays of his lantern down onto the track and observe that he was on a bridge before getting off the caboose; that witness could have discovered such a condition with his own lantern. This witness, who was walking immediately behind plaintiff, testified that to the best of his knowledge plaintiff did not look down in the direction he was stepping before he fell.

It also appears from the evidence that there is another bridge about 25 car-lengths west of the Omira switch that had a walk and railing on both sides. The bridges were open and unconcealed. There was no difficulty in seeing them and obesrving their character. Witness knew of no reason why the plaintiff could not see the bridge and the fill. Witness had properly cleaned the lanterns, and when they left the caboose the lanterns were lighted.

Plaintiff, on being recalled, testified that he was acquainted with the bridges, within the working limits and the third and fourth divisions, as to their construction, width, and protection provided at points where train operatives are required to get off and on trains in connection with their duties; that by "working limits" he meant the

length of the trains upon which he was working; that some bridges within working limits were constructed with walks and railings on both sides; that the walks were about 3 feet wide and the railings 4 feet high; that the walk and railing would be a protection for men getting off the train; that the walk would prevent men from stepping or falling off the bridge. Plaintiff further testified that he started to work for defendant railroad company in 1915; and worked steadily until the accident; that, when he started to work, the average length of freight trains was from 20 to 30 cars, but that after that the trains had increased in length from time to time; that the trains were increased from 20 to 30, then to 48, then to 74, and then up to 110 cars which he had handled in one train; that these had been in use for about two years before the accident, and were going west, and would only pass over and never "strike the bridge" which his eastern train struck on the day of the accident; that, as the trains were being lengthened, walks and rails were added to the construction of the bridges.

On cross-examination it was conceded by plaintiff's counsel that the record of service kept by the defendant showed that plaintiff, either as brakeman or as conductor, had passed over the bridge, at which the accident occurred, several hundreds of times. The rules of the company were called to the attention of plaintiff. He testified that he had read the rules requiring conductors to be careful and not to incur risks from which they could protect themselves; that he had read the rules, and in a general way was familiar with them. He recalled the particular rule that required him to take the safe course, watch for dangers, and seek to avoid them; also the rule that required employes to look after their own safety; also the rule that provided "in case of doubt or uncertainty the safe course must be taken." Part of the time he had the rule book in his possession, but did not have it at the time of the accident. At the time of the accident, when he started out of the caboose, he was not thinking about these bridges. He knew they did not

have handrails or board walks. If he had known the caboose had stopped on a bridge, he would not have gotten off as he did. He thought he was stepping on a fill. All trains stopped at Omira for inspection.

Defendant's evidence showed there were 80 bridges on the fourth subdivision of the road, only 6 of which had handrails and board walks. 22 of these eighty bridges were located within a 99-car limit, 16 of which had no board walk or handrail on either side. Defendant's witness testified that he knew of no railroad in the United States having a general rule requiring bridges to be constructed with foot walks and railings located at a greater distance from a switch or inspection point than 400 feet. The witness so testifying was a member of the American Railroad Bridge & Building Association, which consisted of 200 of the class 1 railroads of the United States. Other witnesses testified to the same effect as to railroads in the western part of the country. There was testimony to the effect that the greatest objection to constructing foot walks and railings was the cost of the installation and maintenance. There was also evidence to the effect that foot walks and handrails had a tendency to accumulate rubbish, weeds, etc., thus rendering the bridges more liable to destruction or injury by fire. In addition to these facts, it appears from the evidence that foot walks and handrails might be hazardous to employes looking for hot boxes, who might be struck leaning out. The evidence was conclusive to the effect that the construction of the bridges on defendant's railroad, and the construction of the walks and handrails in connection therewith, together with the location of such bridges with relation to switching points and working limits, were in conformity with the general custom and practice of other railroads in the United States.

Such are the main features of the evidence. Other features will be referred to, if deemed material in the course of the opinion.

At the close of the evidence the defendant moved for a directed verdict on the following grounds: (1) There was no evidence of negligence. (2) There was no evidence that the alleged negligence was the proximate cause of the injury. (3) Contributory negligence of the plaintiff. (4) Plaintiff assumed the risk.

On the ground last mentioned the trial court granted the motion, and directed a verdict for the defendant. Verdict was rendered accordingly, and judgment entered thereon. Motion for a new trial was overruled, and plaintiff appeals.

The principal assignment of error is the order directing verdict for the defendant. If, as matter of law, under the undisputed facts, plaintiff assumed the risk, that is the only question that need be determined, unless there was error in admitting or excluding evidence affecting plaintiff's assumption of the risk.

In its motion for a directed verdict, defendant alleged that plaintiff was injured as the result of a risk which he assumed in his employment; that he was familiar with this bridge and all other bridges on the road; that he knew where he was with reference to Omira, and that this unguarded bridge was somewhere in the vicinity of the caboose; that, knowing the danger, risk, and hazard, and that the caboose might stop on the bridge, he voluntarily continued his employment, and so assumed the risk. The uncontradicted evidence discloses that plaintiff had knowledge of the bridge in question, and that it was not protected by foot walk or handrail. The evidence also discloses that he knew the caboose had stopped somewhere in the vicinity of the bridge. These facts are made more clear by his admission to the brakeman, Arnell, not specifically referred to in our statement of the case. By his own testimony he knew that the caboose had stopped at approximately about one mile from Omira. The uncontradicted evidence also discloses that there were 80 bridges on the fourth division of the road, only 6 of which were protected by foot

walks or handrails. It further appears that at the time of the accident there were 22 bridges on the fourth division within a 99-car limit of a switch or inspection point, and 16 of those bridges had no board walk or handrail on either side. It further appears that a majority of the bridges were without foot or board walks or handrails, even when constructed within a 48-car limit of a switch or inspection point. From the record before us, it is unbelievable that plaintiff was without knowledge of these conditions. Knowing such, he voluntarily continued in his employment as freight train conductor on defendant's railroad. He certainly knew and appreciated the danger of stepping from a caboose situated upon a bridge unprotected by foot walk or handrail. And, finally, it seems to us that it must be conceded that plaintiff knew that his duties might require that he step from the train on some occasions when not within working limits of a station, and that, even when within such limits, he might step from a caboose situated upon a bridge not protected by walk or railing. Such bridges were no wider than the caboose itself, and in stepping therefrom he would certainly fall to the ground beneath.

There is much discussion in the briefs as to whether or not the defendant was negligent in not providing a foot walk and railing for the bridge in question. Plaintiff insists defendant was negligent. Defendant contends to the contrary. Both parties quote copiously from authorities. It is unnecessary to refer to or comment on the authorities as far as defendant's negligence is concerned. Nor is it necessary that we determine that issue. For the purpose of this decision, and for that purpose only, we shall assume that defendant was negligent. The sole question is: Did plaintiff assume the risk? Upon that assumption the risk was not assumed by the plaintiff, unless he had knowledge of the defect, and knew and appreciated the danger, or unless the defect and danger were so obvious and apparent that the plaintiff must be presumed to have known them. This is, in substance, appellant's con-

tention, and in our opinion is a correct statement of the law. We have already stated the facts as we read the record. In support of appellant's contention, that he did not assume the risk, he relies on the following cases: *McAfee* v. *Ogden R. & D. Co.*, 62 Utah 115, 218 P. 98; *Texas & Pac. R. R. Co.* v. *Swearingen*, 196 U. S. 51, 25 S. Ct. 164, 49 L. Ed. 382; *Leach* v. *O. S. L. R. Co.*, 29 Utah 285, 81 P. 90, 110 Am. St. Rep. 708; *Choctaw, Oklahoma, etc., R. R. Co.* v. *McDade*, 191 U. S. 64, 24 S. Ct. 24, 48 L. Ed. 96; *Boston & M. R. R.* v. *Brown* (C. C. A.) 218 F. 625; *Davis* v. *Crane* (C. C. A.) 12 F. (2d) 355; *Central of Georgia R. Co.* v. *Davis* (C. C. A.) 7 F. (2d) 269; *Cincinnati R. R. Co.* v. *Thompson* (C. C. A.) 236 F. 1.

In the McAfee Case, supra, plaintiff was the foreman of a switching crew, and, while riding on the ladder on the side of a box car, came in contact with a switch stand in unusual proximity to the track. He was knocked off the ladder, and suffered injury. This court held that whether he assumed the hazard of an obvious danger was a question for the jury. Plaintiff in that case had worked in the yards about six months prior to the injury. He had not paid particular attention to that switch any more than he did to any other switch. He suposed there was sufficient clearance, and did not know it was too close to the track. He did not remember ever riding past the switch when he was on the side of a car. The distinction between that case and the case at bar is obvious. In that case it cannot be contended that plaintiff knew, if he rode on the side of the car, he would come in contact with the switch stand. In the instant case plaintiff knew, if he stepped off the car standing on the unguarded bridge, he would certainly drop to the ground below. Moreover, the plaintiff, McAfee, had the right to assume that there was sufficient clearance betwen the side of the car upon which he was riding and the switch stand to permit him to pass in safety. In a case of that kind, where the difference of an inch, or even a fraction of an inch, in the clearance might be the cause of ser-

ious injury, the court would hardly be warranted in holding as matter of law that the employe had knowledge of the defect and appreciated the danger, or that the defect was so apparent that he must have known it. In the case at bar there is no evidence whatever to justify plaintiff in the assumption that this particular bridge had been provided with a board walk or handrail. On the contrary, every inference deducible from the evidence leads to the conclusion that he knew the bridge had not been so protected.

In the Leach Case, supra, the deceased, who was a brakeman, was struck by the uprights of a bridge in too close proximity to the car upon which he was riding. He had made only three or four trips on the train as brakeman, and there was no evidence that he knew or should have known the clearance between the car and the end of the upright of the bridge. The Leach Case is analogous in principle to the McAlfee Case, and this court held there was no assumption of risk.

In the Swearingen Case, supra, plaintiff was struck by a scale box in too close proximity to a switch track. Plaintiff had no knowledge of the insufficient clearance. Nor does it appear that he had been warned of the defect. This case also is within the rule applied in the McAfee Case.

The other cases relied on and cited by appellant, except one, were all cases in which there was insufficient clearance between the cars upon which the employes were riding and some obstruction with which they came in contact. In none of such cases was there evidence that the injured employe had actual knowledge of the defect, or that it was so obvious and apparent that the plaintiff must have known it. The exceptional case above referred to is that of *Cincinnati, etc., R. Co.* v. *Thompson* (C. C. A.) 236 F. 1. In that case plaintiff, a brakeman on a freight train, stepped from the train as it was slowing down for the purpose, as he testified, of inspecting the under parts of the cars as they

passed by. In alighting he stepped or jumped upon a loose piece of furnace slag about the size of a cocoanut. It rolled under him and pitched him forward head foremost. His right foot was run over by the cars and had to be amputated. The negligence complained of was permitting this piece of slag to be there. It was contended by the defendant that plaintiff assumed the risk. The plaintiff testified that in going over the yard from time to time he had observed pieces of slag, and as a rule he had avoided stepping upon them. He testified, however, that he did not know of any pieces there as large as the one he stepped on. He knew it would be dangerous to step on any piece of slag, but a small piece would not be so liable to throw him as the larger piece upon which he stepped. There was no evidence tending to show that pieces of slag as large as that upon which plaintiff stepped had been permitted to remain where the trainmen might step upon them. In these circumstances the court held the plaintiff did not assume the risk. The bare statement of the facts of that case distinguishes it from the case at bar.

Respondent calls attention to the following cases upon which it relies: *Laub* v. *San Pedro, L. A. & S. L. R. Co.,* 47 Utah 155, 152 P. 467; *New York Cent. & St. L. R. Co.* v. *McDougall* (C. C. A.) 15 F. (2d) 283; *Delaware, L. & W. R. Co.* v. *Tomasco* (C. C. A.) 256 F. 14; *Southern Pac. Co.* v. *Berkshire,* 254 U. S. 415, 41 S. Ct. 162, 65 L. Ed. 335; *Chesapeake & O. R. Co.* v. *Leitch,* 276 U. S. 429, 48 S. Ct. 336, 72 L. Ed. 638; *Smith* v. *Winona & St. P. R. Co.,* 42 Minn. 87, 43 N. W. 968; *Butler* v. *Frazee,* 211 U. S. 459, 29 S. Ct. 136, 53 L. Ed. 281; *Howe* v. *Michigan Cent. R. Co.,* 236 Mich. 577, N. W. 111; *Louisville & N. R. Co.* v. *Heaton,* 207 Ky. 164, 268 S. W. 1075; *Moore* v. *Chesapeake & O. R. Co.,* 213 Ky. 69, 280 S. W. 482; *Friermood* v. *Oregon-Washington R. & Nav. Co.,* 134 Wash. 178, 235 P. 17; *Lovejoy* v. *Boston & L. R. Corp.,* 125 Mass. 79, 28 Am. Rep. 206; *Hull* v. *Virginian R. Co.,* 78 W. Va. 25, 88 S. E. 1060; *South-*

*ern Pac. Co.* v. *Gloyd* (C. C. A.) 138 F. 388; *Chicago, B. & Q. R. Co.* v. *Barnard,* 32 Neb. 306, 49 N. W. 362.

It is impracticable within reasonable limits to review all of these cases. The Laub Case, supra, is somewhat analogous, in principle at least, to the case at bar. Laub was locomotive fireman on defendant's road. He had been in defendant's employment for about 2½ years, and at the time of his injury, and for 18 months prior thereto, had been operating between Newhouse and Milford. At Milford defendant maintained an incoming track and an outgoing track. In close proximity to the incoming track, and alongside thereof, was an ash pit about 200 feet long and 4 or 5 feet deep. This ash pit was never guarded or lighted, and plaintiff was cognizant of that fact. In attempting to go from his engine to the roundhouse, in obedience to instructions from the engineer, he, on a dark night, fell into the ash pit and was injured. His engine usually stopped south of the pit, but on this occasion it stopped north of it. This was the first time he had ever known it to stop north of the ash pit. It was his duty to go to the roundhouse and register both on coming in and going out. Plaintiff alleged as negligence the failure of defendant to guard and light the ash pit, and, in passing upon defendant's contention that plaintiff assumed the risk the court, at page 158 of 47 Utah (152 P. 468) says: "We think the contention is sound. The rule is well established that, when a servant enters upon or, without complaint, continues in a service with full knowledge and appreciation of dangers and hazards of the employment, and to which he, in the course of his employment, is exposed, he assumes the risk, and that, too, regardless of whether the dangers are ordinarily incident to and such as ordinarily arise out of the employment, or are abnormal and unusual." The court quotes from the other Utah cases to the same effect in support of its conclusion.

It is unnecessary to prolong the opinion by reviewing the remaining cases cited by respondent. They are all more

or less in point and instructive as to when, and under what circumstances, the risk is assumed. Many of the cases cited appear to be in conflict with the cases cited by appellant, in which insufficient clearance was the direct cause of the injury, and hold in such cases that the injured employe assumed the risk.

The fact that plaintiff may not have exercised ordinary care before stepping from the caboose, as indicated by the evidence, goes only to the question of his contributory negligence, which is not material to the question presented here. Neither is it material that plaintiff at the time was not conscious of the fact that the caboose was standing upon a bridge. Perhaps no instance can be found in the history of personal injury cases where the employe injured was conscious of the fact that he was about to do something that would surely result in injury or death. The sole question here is: Did the plaintiff have knowledge of the condition of the bridge and the manner of its construction, and did he also have knowledge that his caboose had stopped in the vicinity of the bridge? He admitted that he had such knowledge, and the conditions and circumstances disclosed by the evidence all tend to confirm his admission. These facts and circumstances are conclusively established by the evidence, together with the fact that plaintiff fully appreciated the danger. Plaintiff's knowledge of these conditions had existed for years prior to his injury. He voluntarily continued in defendant's employment, notwithstanding the known hazard, and therefore must be held to have assumed the risk.

We have considered the other errors assigned by appellant, and find they are without merit.

JUDGMENT AFFIRMED, at plaintiff's cost.

CHERRY, STRAUP, HANSEN, and GIDEON, JJ. concur.