## AMERICAN DREDGING CO. v. WALLS.

(Circuit Court of Appeals, Third Circuit.   January 10, 1898.)

### No. 3.

MASTER AND SERVANT—DEFECTIVE APPLIANCES—ASSUMPTION OF RISKS.

A workman who, for several weeks, has gone daily upon an uncleated inclined table to oil the machinery, without complaining of the want of cleats, assumes the obvious risks resulting from their absence, upon the negligent starting of the machinery by a fellow servant.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was an action by Joseph H. Walls against the American Dredging Company to recover damages for personal injuries. In the circuit court verdict and judgment were given for plaintiff, and the defendant sued out this writ of error.

Joseph T. Bunting, for plaintiff in error.

Harvey K. Newitt, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and KIRKPATRICK, District Judge.

DALLAS, Circuit Judge.   The plaintiff below (defendant here) brought his action to recover damages for personal injury sustained while he was in the employment of the defendant below. When the accident happened he was upon a certain "inclined table" on board the steam dredge Republic, for the purpose of oiling a part of the machinery. While thus lawfully there, he fell, and his right hand was caught in the mechanism and severely injured. He averred in his statement of claim that the disaster was occasioned by the negligence of the defendant, in that the said table "had no cleats or other appliances thereon to protect persons lawfully there from falling and injury, [and] the said master of said dredge, in violation of his duty, negligently caused the machinery of said dredge to be put in motion, and the said dredge to roll." The plaintiff proceeded in accordance with this allegation, and adduced evidence in its support. The learned judge, however, held—and in this he was clearly right—that the person who caused the machinery to be put in motion was the plaintiff's fellow servant, and that, therefore, for any negligence of his there could be no recovery; but he declined to charge, as requested, that, "under all the evidence in this case, the verdict of the jury must be for the defendant," and in this we think there was error. It is not clear that the act of putting the machinery in motion should not be regarded as the sole cause of plaintiff's injury. But for that act the plaintiff's situation would not have been a dangerous one, and the accident

would not have happened. He testified: "If the machinery had not been started, my hand would not have been hurt, because there would have been nothing there to hurt it." How then can it be said that the alleged faulty construction of the table contributed to produce that hurt, and that the movement of the machinery was but one of two concurrent causes of the harmful result? This question is, at least, not free from difficulty; but it need not be answered, for our judgment does not depend upon its solution, but rests upon the objection to the plaintiff's asserted right of action, which will now be considered.

The plaintiff was a man 22 years of age. He had been working on this dredge for upwards of 6 weeks when he was hurt. He had been very frequently upon this table. There were not, at any time, any "cleats" upon it; and this, of course, was well known to him. The fact was as obvious to him as it could possibly have been to the defendant. The risk attendant upon being there with the machinery in operation was palpable, and, moreover, his attention had been expressly called to it. He had been directed to work there when the machinery was still. That he intended to conform to this direction upon the occasion in question, as he had previously done, and that the machinery was carelessly put in motion, may be conceded; but for this carelessness of a fellow servant the common master is not responsible. What, then, remains upon which liability on the part of the defendant can be predicated? Only this: that, perhaps, it was its duty to provide means for the protection of the plaintiff against possible negligence of one of his co-employés. But, if this, too, as a general proposition, be accepted, yet the facts of this case require its qualification, under the established rule that the employed assumes all those risks which are incident to his employment, and which are patent and obvious. The absence of cleats, the possibility of the machinery being negligently set in motion, and the consequent danger, were too plainly evident to admit of question as to the knowledge and comprehension of them by a person of mature years and of several weeks' experience. The plaintiff never complained that no cleats were upon the table. If he had done so, it is probable his complaint would have been heeded; and after having, every day, and four or five times a day, gone upon the table without them, and without objection, his charge that the defendant owed him a duty to put them there seems to us to be most unreasonable. It cannot be sustained under the authorities. The many cases which show this need not be cited. Those referred to in the opinion of the court in Southern Pac. Co. v. Seley, 152 U. S. 145, 14 Sup. Ct. 530, will suffice. In that case, "the theory upon which the plaintiff proceeded in the court below was that Seley lost his life by reason of the negligence of the defendant, a railroad company, in using in its switches what is called an 'unblocked frog.'" And the supreme court, after citing with approval several decisions of the courts, state and federal, in cases some of which closely resemble the present one, held, reversing the court below, that, inasmuch as Seley, knowing, as he did, the character of the frog and the liability of being caught in it, yet persisted in exposing himself to an obvious danger, no other conclusion was warranted than

that he took the risk of the work in which he was employed. The like conclusion is, we think, necessary in the present case. The judgment of the court below is reversed.