JOSEPH FAULKNER, Respondent, v. MAMMOTH MIN-
ING COMPANY, Appellant.

OBJECTION TO EVIDENCE—WAIVER—CONTRIBUTORY NEGLIGENCE—AS-
SUMPTION OF RISK—DUTY OF MASTER—PLEADING—EXPERT EVI-
DENCE—DIRECTIONS OF FOREMAN.

1. Where evidence was admitted, over an objection, on the ground that
it might be material in connection with testimony to be subsequently
introduced, but subject to a motion to strike out unless its materi-
ality was shown, an objection to such evidence is unavailing if no
motion to strike out was made and denied.

2. Contributory negligence of a servant consists of the performance of
some negligent act, or the negligent omission to perform some duty,
which materially contributed to, and in conjunction with the negli-
gence of the master, was one of the elements of the proximate cause
of, the injury to the servant.

3. Where a servant enters upon or continues in a service with full
knowledge that it is dangerous, and of the extent of the danger, there
is an implied contract of assumed risk, by which he waives his right
to recover for injuries received in such service.

4. Where a master employs one to enter into his service, it is an im-
plied contract that he will exercise ordinary care to protect him from
all danger except such as is obvious and necessary, and the doctrine
of assumed risk by the employee does not lessen the master's duty.

5. The defense of assumed risk is available only when pleaded.

6. Where a miner was engaged by order of his foreman in excavating
at a place which the foreman assured him was safe, he had a right
to rely on such assurance, and did not assume the risk incident to the
surroundings.

7. Where a miner was ordered by his foreman to make excavations at a
place where the miner thought the overhanging ground looked "a
little suspicious," but the foreman assured him it was safe, there was
no such obvious danger as to create an assumption of risk, in spite
of the fact that the work was under the foreman's supervision.

8. Where a miner was making excavations preparatory to the placing of supporting timbers by other workmen, he was not engaged in making a dangerous place safe, so as to work an assumption of risk.

9. An instruction that evidence as to the defective condition of a certain sill should be disregarded, unless such defective condition directly contributed to the injury, was correctly refused; the evidence being properly for the jury's consideration if it was an efficient, though it may not have been a direct, cause.

10. Where the jury was instructed that it was their duty to determine on which side the evidence preponderated, and to find a verdict in accordance therewith, the refusal of an instruction that the jury must not arrive at their verdict by mere speculation, but that the verdict must be supported by the evidence, was not error.

11. In an action for personal injuries alleged to have been caused by the defective condition of a mine, questions to expert witnesses as to whether the decayed state of a sill would render extra timbers necessary, to make it reasonably safe for a man to work at the place where the accident occurred, were not objectionable as calling for conclusions as to the safety of existing conditions, but admissible to show the proper mode of construction.

Decided April 19, 1901.

Appeal from District Court, Juab County.—*Hon. W. M. McCarty*, Judge.

Action by Joseph Faulkner against the Mammoth Mining Company. From a judgment in favor of plaintiff, defendant appeals.

AFFIRMED.

*Messrs. Rawlins, Thurman, Hurd & Wedgwood* and *Bennett, Howat, Sutherland & Van Cott*, for appellant.

*Messrs. Powers, Straup & Lippman*, for respondent.

BASKIN, J.—The complaint, in substance, alleges that the plaintiff on the fifteenth of June, 1898, was an employee

of the defendant, and as such was working as a miner in the
defendant's mine; that the defendant negligently suffered and
permitted the underground workings where the plaintiff was
engaged at work under the order and directions of the defend-
ant to become and be in an unsafe and dangerous condition, as
the defendant well knew, by reason of negligently failing and
neglecting to remove decayed portions of the timbers, and by
negligently failing to properly timber said workings, and caus-
ing said workings to be timbered in a dangerous manner, and
that while the plaintiff was so engaged at work, and not know-
ing the dangerous condition of said underground workings,
and relying on the assurance given him by the defendant that
said workings were safe, large quantities of earth, rock, and
ore fell, by reason of the negligence of the defendant as afore-
said, and struck the plaintiff, and permanently injured him.
The answer denied the negligence charged, and alleged that
the injuries of the plaintiff, if any were suffered by him, were
caused by his own fault and negligence, which directly con-
tributed thereto.

1.   The first objection presented by counsel for the ap-
pellant is that the court erred in admitting certain testimony
relating to a rotten sill in the mine, which was objected to on
the ground that the same was immaterial. There are numerous
cases which hold that such an objection is too general to be
considered by an appellate court.    8 Enc. Pl. and Prac.
227.    It is not necessary, however, in this case, for us to
pass upon that question.    It appears from the record that
when said objection was made, and upon plaintiff's attorney
stating that he could not present everything at once, the trial
judge said:    "I think it would be proper, if they can show that
the timbers above [where plaintiff was injured] were defect-
ive, and that there were not sufficient timbers from below."
He further stated that he would sustain a motion to strike out

the testimony unless so connected. In many cases the relevancy of a fact depends upon its connection with others. In such cases the court can not determine whether the first fact in the chain of evidence is relevant until those with which it is connected are shown, and as they can not all be presented at once, in practice, unless it is apparent that in no event can the offered testimony become material, from necessity the court is often compelled to admit, over objection, evidence the relevancy of which at the time of the introduction thereof is not apparent, on the condition that the party offering the same will afterwards introduce other evidence so connected with the evidence objected to as to show the relevancy of the latter. In instances of that kind an objection to such evidence is not available unless its relevancy is not so shown, and a motion to strike the evidence out is made and refused after a failure to show its relevancy. 2 Thomp. Trials, sec. 717; Bayliss v. Cockcroft, 81 N. Y. 363; Ditch Co. v. Ream, 27 Or. 129, 39 Pac. 998; Dillin v. People, 8 Mich. 357; State v. Meader, 54 Vt. 656; People v. Chavez, 103 Cal. 407, 37 Pac. 389. In the case at bar, if, after the objection was made, the evidence objected to was not, in the opinion of defendant's counsel, so connected with other evidence adduced as to show its relevancy, a motion should have been made to strike it out, or a request made to instruct the jury to disregard the evidence. This was not done.

2. The second assignment of error discussed by appellant's counsel is that the trial court erred in refusing the defendant's request to instruct the jury to return a verdict for the defendant. The ground upon which the appellant predicates the right to such an instruction is that the plaintiff assumed the risk of working in the place where he was injured. The assumed risk of a servant is wholly different from his contributory negligence, although the effect of both is to defeat

a recovery.   Beach, Contrib. Neg., secs. 15, 16; Bailey, Mast. Liab., p. 197; Mundle v. Manufacturing Co., 86 Me. 400, 30 Atl. 16; Miner v. Railroad Co., 153 Mass. 398, 26 N. E. 994. Contributory negligence of a servant consists of the perform- ance of some negligent act, or the negligent omission to perform some duty, which materially contributed to, and, in conjunction with the negligence of the master, was one of the elements of the proximate cause of, an injury to the servant. Assumed risk is a contract, and may be implied as well as expressed.    When a servant enters upon or continues in a service with full knowledge that it is dangerous, and is fully aware of the extent of the danger to which he is exposed, there is an implied contract of assumed risk, by which, on the principle of the maxim, *"Volenti non fit injuria,"* the servant waives his right to recover for injuries received by him in such service. An assumed risk is an affirmative defense, essentially different in its character from the defense of contributory negligence, and should therefore be pleaded as an implied contract, in bar and as a waiver of the plaintiff's right to recover.   Bailey, Mast. Liab., pp. 197, 198; Beach, Contrib. Neg., secs. 15, 16, 370, 371; Railway Co. v. Tracy, 14 C. C. Ap. 199, 66 Fed. 931-936; Railroad Co. v. Orr, 84 Ind. 50; Nicholaus v. Railway Co., 90 Iowa 85, 57 N. W. 694; Mayes v. Railway Co., 63 Iowa 562, 14 N. W. 340, 19 N. W. 680; 13 Enc. Pl. and Prac. (2 Ed.), 914.

3.   In connection with this question, appellant assigned as error the refusal of the court to give the following instruction:   "If you believe from the evidence that in the place in which the plaintiff was working the conditions were constantly changing by the act of the plaintiff, the rule requiring the defendant to furnish a reasonably safe place for plaintiff to work does not apply."   The doctrine of assumed risk has a material bearing on this assignment, unless the latter covers entirely

different ground than is covered by the second assignment.
A further examination into the law of assumed risk is there-
fore necessary. It is implied from the contract of service that
the place in which the servant is employed to work is as rea-
sonably safe as the hazard nominally incident to the work in
hand permits, and that the master will, during the servant's
term of employment, use due and ordinary care and skill in
keeping it in that condition; and although it is also implied
that the servant assumes all unavoidable risks necessarily in-
cident to the work in hand which are so apparent that the ser-
vant must be aware of the immediate presence and extent of
the danger to which he is exposed, or by the exercise of ordi-
nary care and prudence could readily ascertain these facts, it is
not implied that the negligence of the master is a risk assumed
by the servant. When the master employs one to enter into
his service, he impliedly says to him that he will exercise ordi-
nary care and skill to protect him from all danger except such
as is obvious and necessary. Pool v. Southern Pac. Co., 20
Utah 216, 58 Pac. 326, and cases there cited; Railroad Co. v.
O'Brien, 161 U. S. 451, 16 Sup. Ct. 618, 40 L. Ed. 766; Rail-
road Co. v. Daniels, 152 U. S. 688, 14 Sup. Ct. 756, 38 L. Ed.
597; Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914,
37 L. Ed. 772. The doctrine of assumed risk by the employee
does not lessen the master's implied duty to supply and main-
tain a reasonably safe place for the performance by the ser-
vant of the work required of him, except when the place fur-
nished and maintained is so obviously unsafe that a reasonably
prudent person would not attempt to work in it, and with a
full and intelligent understanding of its defects, or after a fail-
ure to exercise reasonable care to ascertain its condition, gave
full consent, express or implied, to abide by the consequences
which might follow from its use. Southern Pac. Co. v. John-
son, 16 C. C. A. 317, 69 Fed. 559, 573, 574; Bender v. Rail-

way Co., 137 Mo. 240, 245, 37 S. W. 132. When the servant acts "under the immediate direction of the master's foreman, that fact is equivalent to an assurance that the servant may safely proceed; and he is not bound in such case to search for danger, but may rely on the judgment and conduct of the foreman." Herdler v. Range Co., 136 Mo. 3, 37 S. W. 115; Sullivan v. Railroad Co., 107 Mo. 78, 17 S. W. 748, 28 Am. St. Rep. 388. Undoubtedly, unless the danger is so obvious as to prevent a reasonably prudent man from assuming the risk, the rule is that the servant who acts under the personal direction of the master or his foreman does not assume any risk except such as is an ordinary and reasonable incident of the employment. Mangum v. Mining Co., 15 Utah, 534, 50 Pac. 834; Bailey, Pers. Inj., sec. 989 et seq., and cases cited. The evidence in this case fails to disclose any such obvious danger. In the case of Pool v. Southern Pac. Co., supra, this court said: "The deceased, when he obeyed the order [of the foreman], had a right to presume that he would not be exposed to unnecessary danger, and that the defendant had used proper care to render the place where he was at work reasonably safe." In the case at bar the plaintiff, when injured, was engaged in carrying out an order of the foreman requiring him to perform a specific act. Upon his examination as a witness he stated: "When I got hurt, I was drilling to take the ground out for the posts. I was drilling in the corner for the fourth post. I saw Mr. Tranter that night, about three-quarters of an hour before I got hurt. He was the foreman in the mine at the time. He directed me in my work, and had charge of the working there. I saw him right on the side of me, at the bottom set. He was giving me orders. He told me that he wanted me to have the ground pulled out for the posts. He says: 'Take that ground out for the posts first, and then go above.' I told him: 'It looks to me kind of suspicious, for that ground hang-

ing above there, and a man working underneath.' He says:
'That ground is all right. You take that ground out for that
post.' He told me that he had examined it, and it looked to
him all right. He said it needed no stulls before I put up the
post. When the accident happened I was drilling a hole in
the corner for a post. Tranter told me to take the ground out
for a post; to put a hole in there. I was drilling, and all at
once I heard some kind of a motion, and at the same time the
ground came down. It hit me over the head and over the
back." On cross-examination he said: "A stull is a piece of
timber. It is used for anything a man wants it for. To sup-
port—. One end is put over against anything you want to
support where the ground is weak. That is a temporary sup-
port. Some timberman did the timbering there. The miners
dig out the places to put in the square sets. That was my
business. . . . . . I did not tell Mr. Tranter that it was danger-
ous. I says, 'That ground looks a little suspicious, hanging
up there, and a man working underneath.' I didn't have no
right to take it down. It was not my business to move that
out of my way before I begun working there. . . . . . . I could
not say that it was dangerous. I could say that it looked sus-
picious. It looked so that the ground might come down.' It
didn't look loose. It didn't look solid. None of the rocks
looked loose. That is pretty good ground to work in. The rule
as to that ground right there is that it is good, safe ground.
I had been working in that stope about a month. I had been
working there long enough for a miner with my experience
to get well acquainted with the material and the timbering. I
told the foreman the ground looked suspicious about me, and
he said he had examined it, and it was all right. I always took
the foreman's word." Where the servant is intrusted with
the duty of making a place which is known to be dangerous
safe, or engages in a work the danger of which as he proceeds

necessarily changes from time to time, and he is left free to pursue his own course and select his own appliances, he assumes the risk, unless the master has done or neglected to do something that his duty to his servant reasonably requires, which unnecessarily increases the natural hazard of such changes. In the case at bar, the plaintiff was not intrusted with the duty of making the place safe. The prosecution of the work which he was ordered to perform was not such as naturally changed the danger of the place. Therefore, the cases of Anderson v. Mining Co., 16 Utah 41, 50 Pac. 815; Finalyson v. Milling Co., 14 C. C. A. 494, 67 Fed. 507, and the other cases cited by appellant's counsel, are not in point. Where the risk of working in a place is assumed, of course, the rule requiring the master to furnish a reasonably safe place does not apply. The assignment in question does not, therefore, cover ground different from the second one. Under a similar state of facts, as the record discloses, this court, in the case of Miller v. Mining Co., 18 Utah 358, 55 Pac. 58, held that whether there was assumed risk was for the jury to determine. Schlacker v. Mining Co., 89 Mich. 253, 50 N. W. 839. In view of the evidence in the case at bar, and the rules of law applicable thereto, independent of the consideration of the fact that assumed risk was not specially pleaded in bar of the action, the instruction in question was properly refused.

4. The appellant also assigns as error the refusal of the court to give the following instruction: "Unless you find from the evidence that the sill referred to by the witness was decayed, and unless you further find that it was at the time of the accident broken or displaced, or in some manner, on account of its defective condition, directly caused or contributed to the accident to the plaintiff, you can not consider in any way the decayed or defective condition of the same. You can not arrive at a verdict by mere speculation or conjecture, but your verdict must be supported by the evidence." That which directly

caused and contributed to the injury to the plaintiff was the blow which he was struck by the falling material. The cause which immediately started that material was an indirect cause, and indirectly contributed to the injury. The evidence tends to show that there were other secondary causes more remote than the indirect one mentioned, and which still more remotely contributed to the cause of the injury. Bailey, Mast. Liab., p. 419. If the decayed sill was efficient in causing, or contributing to the cause of, the plaintiff's injury, then its condition was a proper consideration for the jury, notwithstanding it may not have directly caused, or directly contributed to the cause of, the accident. The jury were instructed that they were the sole judges of the facts in the case, the credibility of the witnesses, and the weight of the evidence, and that it was their duty to determine on which side the evidence preponderated, and to find a verdict in accordance therewith. The defendant not having made a motion to strike out, the evidence relating to the decayed sill and its weight, like the other evidence in the case, was a matter to be determined by the jury. The instruction to find a verdict on the preponderance of the evidence, in effect, was the same as the second clause of the instruction under consideration, requested by the defendant and refused by the trial court. The refusal to give that instruction was not reversible error.

5. A witness for the plaintiff was asked the following question: "Now, suppose, in addition to what you have stated, that the sill above was spongy or rotten or decayed, upon which several sets rests above it, would that make it any more necessary for putting in extra timbers as the mining progressed?" Another witness was asked: "What would you say was necessary to be done to make it reasonably safe for a man to work there?" The witnesses were allowed to answer these questions over defendant's objections. The principal objection to these questions discussed in defendant's brief is

that the questions allowed the witnesses to give their conclu-
sions, and that their statements necessarily amounted to a
statement of the fact which the jury were ultimately to find;
that is, whether the place was reasonably safe.    It is not
claimed by counsel for the defendant that the witnesses were
not competent to testify as experts.    In the case of Grant v.
Varney, 21 Colo. 329-334, 40 Pac. 771, 773, the plaintiff
sought to recover for injuries sustained by the caving of a
mine, and in the decision of the case on appeal the court said:
"Witnesses for the plaintiff were permitted, over defendants'
objection, to state, in substance, what was the proper method
of timbering a drift run in such ground as the evidence shows
this one penetrated.    Counsel for defendants now say that
such questions permitted the witnesses to state what the jury
were, as a matter of fact, to find from the evidence, and that
the opinions of the witnesses were not admissible.    The wit-
nesses were not allowed to state whether or not this drift, with
the timbers fifteen or sixteen feet from the breast, was safe.
They spoke only as to the proper way to timber it.    We think
there was no error in this.    These witnesses qualified as ex-
perienced miners.    The questions related to matters of skill in
a department of labor that requires special training, and to
which only those skilled in such work were competent to give
intelligent answers."    In the case of Monahan v. Coal Co., 58
Mo. App. 68, 74, the court said:    "Among other questions,
the witness was asked 'whether it is safe for a man to work in
a shaft with the buntings up twenty-five or thirty feet from
the bottom of the shaft.'    His answer was:    'No, sir.    Q.
State to the jury what is the proper way of constructing a shaft
with reference to the buntings.    A.    To keep them down
pretty low to the bottom of the shaft.    Q.    What is the ob-
ject in keeping them down there?    A.    As a matter of safety,
so that the bucket will not catch; so that there will not be any-
thing knocked loose, and the dirt off the sides don't cave in.'

These several questions were objected to by defendant's counsel on the ground of immateriality, etc., as calling for a mere opinion of the witness as to matter which was not proper for expert testimony. It may well be doubted if it was proper to ask this witness whether the construction of the shaft was safe. This was rather a question to be left to the jury. We see no objection however, to such testimony as tended to advise the jury as to the usual and proper construction of these shafts, the kind and extent of the timber linings used, and the purpose thereof. These are such matters as are not within the common experience of men moving in the ordinary walks of life, and such evidence will materially assist the jury, who come from all avocations." The judgment in favor of the plaintiff in that case was affirmed. Wiggins v. Wallace, 19 Barb. 338; Cooke v. England, 27 Md. 30, 92 Am. Dec. 618; Callan v. Bull, 113 Cal. 607, 45 Pac. 1017; McGonigle v. Kane (Colo. Sup.), 38 Pac. 367. As the witnesses who were asked these questions had previously been shown to be expert miners, the questions were proper.

Numerous exceptions were taken to the instructions given, but all of them are too general to be considered. The record does not disclose any reversible error.

It is ordered that the judgment of the court below be affirmed, and that the appellant pay the costs.

*Miner, C. J.,* concurs in the judgment; *Bartch, J.,* concurs.