## COOK v. UNITED STATES SMELTING CO.

No. 1900. Decided July 29, 1908 (97 Pac. 28).

1. MASTER AND SERVANT—INJURIES TO SERVANT—SAFE PLACE TO WORK—DUTY OF MASTER. Where a smelting company in conducting its business hauled rock and slag through its building in cars running on tracks on a platform elevated on a trestle, and small particles of rock and slag would necessarily fall off along the tracks on the platform, it was not bound to guard against mere accidents to its employees therefrom, and was not required to keep its tracks and platform clear of all particles of slag, however small, but only to keep them reasonably clear of pieces which might be expected ordinarily to interfere with an employee passing along the track and cause injury by his coming in contact with them.

2. SAME—ACTIONS—EVIDENCE—NEGLIGENCE OF MASTER—OBSTRUC-TIONS ON CAR TRACKS. In an action by a servant for injuries sustained by a fall caused by stepping on a piece of rock near defendant's car track, particles of which continually fell from the cars, the evidence *held* insufficient to show that the presence of the rock along the track rendered it unsafe to walk or run along it, or that plaintiff was thereby exposed to danger which should have been anticipated and guarded against.

3. SAME—FAILURE TO LIGHT WAYS—BURDEN OF PROOF. In an action by a servant for injuries caused by the building and tracks of defendant smelting company being insufficiently lighted, plaintiff must show that defendant owed him a duty to light the premises, that it negligently failed to perform that duty, and that such failure was the proximate cause of his injury.

4. SAME—PROXIMATE CAUSE OF INJURY. In an action by a servant for injuries sustained from slipping on a piece of rock near defendant's car track, particles of which necessarily fell along the track from passing cars, where he claimed that his injury was caused by defendant's failure to sufficiently light its tracks and premises, but it did not appear that the rock scattered along the tracks, on a piece of which plaintiff slipped, was larger in quantity or size than the small particles which ordinarily fell from the cars, even if the track was insufficiently lighted at the time, such defective lighting did not expose plaintiff to any danger, so as to render defendant liable.

5. SAME—DUTY OF MASTER TO ANTICIPATE INJURY—IMPROBABLE IN-JURIES. In an action by a servant for injuries from slipping on a piece of rock near defendant's car track, where it did not appear that the rock along the track, when plaintiff was injured, was other than the small particles which ordinarily and neces-sarily fell from cars, it could not be said that defendant should have anticipated injury from that cause, even if the tracks were insufficiently lighted, as it was only required to anticipate and guard against accidents likely to occur, and not against con-tingencies which are unusual and outside the range of ordinary experience.

6. SAME—DUTY TO LIGHT WAYS—CONTINUOUS DUTY. A master is required, not only to furnish sufficient lights in the first in-stance to light its ways for the protection of employees, but to exercise ordinary care to keep the lights repaired and in rea-sonably good condition.

7. SAME—FAILURE TO LIGHT WAYS—EVIDENCE—NEGLIGENCE. In an action by a servant for injuries sustained from slipping on rock near defendant's car tracks, claimed to have been caused by the lights along the track being out at the time, where the evidence showed that three or four of the lights along the

track were out, and the light on the motor about which plaintiff worked was out, but it did not appear what caused the lights to go out, or how long they had been out, or that defendant knew they were not burning or were out of repair, and the other lights in the building were burning, the evidence was not sufficient to go to the jury on the question of defendant's negligence because of the failure of the lights, as the fact that the lights were out did not of itself show negligence by defendant.

8. SAME—CARE REQUIRED. In an action by a servant for injuries alleged to have been caused by the track on which he worked being insufficiently lighted, defendant was only chargeable with defects or abnormal conditions in its lighting which were known, or should have been known in the exercise of ordinary care.

9. SAME—RISKS ASSUMED—KNOWLEDGE BY SERVANT OF DANGER. In an action by a sixteen year old servant for injuries sustained from slipping on rock along defendant smelting company's car track, claimed to have been caused by lights along the track being out, where plaintiff was familiar with the premises and the work, and knew that the lamps on the motor were not burning, and that several of the lights along the track were out, when he jumped from the motor and stepped on the rock on which he slipped, and knew that it was dark, and that he could not see the track distinctly, and that more pieces of rock and slag were scattered along the track than usual, he assumed the risk of injury.

10. SAME—DANGEROUS PLACES—OBVIOUS DANGERS—KNOWLEDGE BY SERVANT. A servant can assume that the master has used due diligence to provide a reasonably safe place in which to work, so as to enable the servant to perform his work with reasonable safety, unless he has knowledge that the master's duty has not been performed, and comprehends the danger to which he is thereby exposed, or the danger is so obvious that such knowledge may be presumed.

11. SAME—YOUTHFUL EMPLOYEE—DEGREE OF CARE REQUIRED. The comprehension and appreciation of danger by a sixteen-year-old servant is not to be measured by the standard required of an adult, but by that required of one of his age, capacity, and experience.

APPEAL from District Court, Third District; T. D. Lewis, Judge.

Action by Fred Cook, a minor, by Mary Ann Cook, his guardian *ad litem,* against the United States Smelting Company. From a judgment for plaintiff, defendant appeals.

REVERSED AND REMANDED FOR NEW TRIAL.

*C. S. Varian* for appellant.

*J. Ingebretzen* and *A. L. Hoppaugh* for respondent.

STRAUP, J.

The plaintiff brought this action to recover damages for personal injuries alleged to have been sustained by him by the negligence of the defendant. It was alleged in the complaint: That the defendant was engaged in the business of smelting ores, and in connection with its smelter it maintained and operated electric motors and cars upon and over a trestle and platform erected in one of its buildings; that the plaintiff, a boy sixteen years of age, was in its employ and was required to couple and uncouple cars and open and close switches; that it was the duty of the defendant to inclose the platform by a suitable fence, to keep it free from rock and slag, to light the premises, to furnish the plaintiff suitable switch bars and appliances, and to cause the motor, upon which the plaintiff was required to ride, to come to a full stop before he alighted therefrom to open and close switches; that these duties had not been performed; and that by reason thereof the plaintiff, while engaged in the prosecution of his work, and in alighting from a motor and running along the track to open a switch in advance of the engine, stepped upon broken rock or slag and was thrown from the platform and trestle a distance of about thirty feet and was injured. The answer contained a general denial and pleas of contributory negligence, fellow service, and assumption of risk. The case was tried to the court and a jury. A verdict was rendered, and a judgment entered for plaintiff, from which the defendant has appealed.

At the conclusion of the evidence the defendant requested the court to direct a verdict in its favor. In passing on the motion the court ruled that the case should be submitted to the jury only as to the issue of the defendant's alleged negligence in failing to have the premises sufficiently lighted, but

34 Utah—13

from the instructions it appears that the court submitted to the jury, also, the issue as to the defendant's alleged negligence in not keeping the track and platform reasonably clear of rock and slag. The appellant contends that the court erred in submitting the case to the jury on either issue, on the grounds that the evidence was insufficient to show negligence on the part of the defendant, and that the plaintiff assumed the risk. We think the contentions are well founded.

The evidence shows that it was the duty of the plaintiff to couple and uncouple cars, open and close switches, load and unload cars. The cars were propelled by an electric motor. When the plaintiff was required to do switching, his position was at a place on the front part of the motor, which was about two feet from the floor of the platform. In the ordinary discharge of his duties he was required to alight from the motor while it was in motion and to run in advance of it to the switch required to be opened or closed, and that such was the usual way of doing the work. The line of road over which the motor cars were operated extended a short distance from a briquetting machine, and upon a trestle and platform constructed in a building about 250 feet in length. The platform of the trestle was planked, and was six and one-half feet wide and about twenty-five feet above the ground floor. The west side of the platform extended to a blind board wall. The east side was open, except for a guard rail which was about three feet above the floor of the platform. There was more or less smoke in the building caused by the smelting operations. Lights were placed about the trestle and along the track short distances apart. The motors were also equipped with headlights consisting of thirty-two candle power lamps throwing a light 150 feet along the track. There was a light at the south entrance of the building about twelve feet above the platform of the trestle. Seventy-seven feet from the entrance was an arc light hanging underneath the west rail of the track. Farther along there were two other arc lights also hanging underneath the track. There was a light

near the place where the plaintiff alighted from the motor. There was also a light about forty-five feet from the first arc light, and about fifteen and one-half feet beyond the switch which the plaintiff was about to open.    There were other lights about the trestle and along the track about eighteen feet apart.    On the day of the accident the plaintiff had worked a shift of eight hours.    The accident happened in the evening at about 6:30 o'clock in the month of December.    The plaintiff had just entered upon a second half of another shift.    The motorman and plaintiff started from the briquetting machine, which was a short distance south of the building and the trestle, with cars loaded with brick.    The loaded cars were moved about the track and were left on a switch or spur track.    The plaintiff and the motorman then started through the building with the motor. A loaded train, which had the right of way, followed them. Another train was in front of them, on another connecting track, near the north entrance of the building.    Cars loaded with rock and slag were continually operated along the track. Pieces of rock and slag fell from them and were scattered along the track and platform.    Sweepers were employed by the defendant to sweep the track and remove them.    As the plaintiff and the motorman approached the building, the plaintiff called to the motorman to turn on the lights of the motor.    The motorman attempted to do so, but the lights would not burn.    The light at the south entrance of the building was also out.    About sixty feet from the entrance, the plaintiff alighted from the motor, which was running between two and three miles an hour, and ran ahead of it, to throw a switch.    The light at this point and the light a few feet beyond the switch were also out.    The plaintiff and the motorman testified that on account of these lights being out the track was not plainly visible.    The plaintiff testified he could see well enough to walk along the track, but he could not see the pieces of rock and slag.    He further testified that:    "As I was jumping off to turn this switch, I had only run a few feet when I stumbled over some ore or rock, and it threw me headlong over the side of the trestle, and

I fell to the ground about thirty feet below." On direct examination he was asked, and he answered: "Q. Now, when you jumped off the motor and started to run ahead and move the switch, you say you slipped on something? A. Yes, sir. Q. What was it that you slipped on, as near as you can tell? A. Well, rock or slag. Q. Was there a good deal of rock and slag there that night? A. Yes, sir. Q. It had not been swept away? A. Well, there was more rock there then than there was at other times when we went through there. Q. It hadn't been swept by the sweeper? A. I don't think it had; no, sir. Q. Was it dark that night? A. Yes, sir." Cross-examination: "Q. Is that about the way the track looks as I show you now on Exhibit 3 (a photograph) at the switch with reference to the debris and stuff on the track? You can see it scattered about there? A. Yes, sir. Q. In that loose sort of a way? A. Yes. Q. Small pieces scattered here and there? A. That is generally the way it is. Q. And it was so all the time you were working there, wasn't it? A. Yes, sir; there was some on there. Q. You never saw it entirely free, did you? A. I don't think so. Q. The rattle of the motor and the rattle of the trains as they passed there would continually drop off stuff there? A. Yes, sir. Q. Now you say you slipped? A. Yes, sir. Q. On a piece of slag or rock? A. Yes, sir. Q. Did you strike your foot and stumble? A. No, sir; I stepped on a piece of rock or slag. Q. Did it turn your foot? A. It just threw me out that way. Q. And you fell over did you? A. Yes, sir; I fell that way. Q. Where did you strike first? A. Well, I just struck the outside of the platform. Q. Now, before you got off the motor, or were getting ready to get off the motor, could you see the switch ahead of you? A. Yes, sir. . . . Q. Now you cannot tell exactly what caused you to stumble, can you? A. No, sir. Q. Except that you stepped on something? A. Yes, sir; I stepped on something. Q. And that either turned your foot or made you slip, and in some way lose your balance so that you pitched over? A. Yes, sir. Q.

Was that immediately after you alighted and started to run ?
A. Yes, sir.    Q. You jumped ahead of the motor with
considerable force I suppose to get a good start?    A. Yes,
sir.    Q. And you were on the jump ?    A. Yes, sir; I
jumped down and just started to run.    Q. Well, did you
strike your foot as you struck the ground, or had you taken
a step or two ?    A. I had taken a step or two.    Q. You
knew that you might expect to find pieces of slag or ore scat-
tered over there as these pictures show ?    A. Some; yes, sir.
Q. And if there was more, a man walking there, or run-
ning there, he might possibly hit his foot on a piece ?    A. Yes,
sir.    Q. Whether there was much or little he might do
that, he might hit a piece with his foot, is that true ?    A. Yes,
he may.''

There is no evidence showing the size or character of the
rock or slag upon which the plaintiff stepped, or the quantity
of it along the track, except as made to appear by the photo-
graph.    Looking at the exhibit, it appears that small parti-
cles of broken rock and slag were scattered here and there
along the track.    The photograph shows the track and plat-
form substantially free from obstructions and particles of
rock and slag which would ordinarily interfere with one's
walking or running along the track.    We recognize the
difficulty there is in accurately judging the size and charac-
ter of the rock and slag from the exhibit, but that is all
the evidence there is upon the question.    Aside from that,
the evidence merely shows that the plaintiff slipped by
stepping on a piece of rock or slag, without any descrip-
tion as to its size or character, or the quantity along the
track, except as testified to by him that there was a good
deal along the track and more at the time of the accident
than at other times.    Of course, one walking or running
along the track may slip and fall by stepping on a mere
pebble or a small piece of broken rock or slag, but no one
would contend that the presence of such a thing rendered
the premises ordinarily dangerous or unsafe.    The defend-
ant was not obliged to guard against mere accidents.    It
was not required to keep the track and platform absolutely

clear of all particles, no matter how small. Such a require-ment, from the nature of the business, was neither prac-ticable nor really possible. The defendant was required to keep the platform and track reasonably clear and free from such things and particles as might be expected to or-dinarily interfere with one in passing along the track and cause injury by his coming in contact with them. The plaintiff having failed to show the size or character of the rock or slag upon which he stepped, or the quantity along the track, he has furnished no basis upon which the conclusion is authorized that by reason of the presence of the rock or slag along the track the use of the premises in walking and running along the track was rendered unsafe, or that the plaintiff was exposed to danger which ought to have been anticipated and guarded against by the defendant. The mere proof that there was some rock or slag along the track, and that plaintiff stepped on a piece of it and slipped, is not sufficient.

This brings us to the question of the alleged negligence of the defendant in failing to have the premises sufficiently lighted. It was incumbent on the plaintiff to show that the defendant owed him a duty to light the premises, that the duty was not performed, and that such dereliction of duty was the proximate cause of plaintiff's injury. It may be assumed that from the character of the work carried on by the defendant, and the duties exacted of the plaintiff at the place in question, the trier of facts may say that there were such attending dangers as to require the defendant to prop-erly light the premises to render them reasonably safe, and to enable the plaintiff to do his work with reasonable safety. Had the plaintiff shown that he came in contact with some object or thing which tended to obstruct the free use of the platform, and which ordinarily could have been avoided by him had the premises been properly lighted, he might have been entitled to have the issue as to the defendant's negli-gence in this respect submitted to the jury; but he has wholly failed to show that his injury was occasioned by coming in contact with such an object. Had he shown

that the broken rock or slag upon which he stepped was of such size or character, or the material of such quantity, as likely to cause one to slip or stumble by coming in contact with it and without seeing it, the case would be different. In such case it might well be said that had the premises been sufficiently lighted the plaintiff could have discovered the presence of the danger, and could have avoided it. Plaintiff having failed to show the character or quantity of broken rock and slag along the track, he has not shown that, by reason of the premises not being sufficiently lighted, he was exposed to any danger on account of the presence of the rock or slag. Having failed to describe the character of the thing which caused his injury, no basis was furnished for determining whether it was of such nature that the defendant, in the exercise of ordinary care, should have anticipated that an injury was likely to result by coming in contact with it, and that therefore a duty was owing from it to light the premises and guard against it. It is not sufficient to say that if the premises had been properly lighted plaintiff could have seen the rock and slag and avoided it. That is assuming the very thing which the plaintiff failed to prove, which is that the rock and slag was of such character as likely to interfere with one's walking or running along the track. Proving that he stepped on a piece of rock or slag and slipped is not sufficient, unless it can further be said that the defendant was required to keep the track and platform free from all particles of rock or slag, no matter how small, and whether they would or would not likely interfere with one in the discharge of duties performed by plaintiff. In this connection, it is suggested that, by reason of the insufficient lighting of the premises, the defendant ought to have anticipated that injury of some sort might likely result in passing along the platform and by stepping on or stumbling over obstructions about the track, and that it was not essential to liability that the defendant should have foreseen that injury would result in the form or way in which it did in fact happen. That is all very true if the plaintiff had shown that the presence of the rock or slag was

of such character as to constitute an obstruction to or an interference with passing along the track, or was something over which one was likely to stumble and fall; but how can it be said that the defendant ought to have anticipated that an injury would likely result by stepping on something which is not described nor characterized, except that it was a broken piece of rock or slag? The defendant was only required to anticipate and guard against contingencies likely to occur, and not against those which are unusual or outside of the range of ordinary experience. Without characterizing the thing upon which plaintiff stepped and slipped, we cannot see how a jury was authorized to draw the conclusion that the defendant ought to have anticipated that an injury would likely result by coming in contact with it, and that hence the defendant ought to have guarded against it by lighting the premises, or by removing it.

We are further of the opinion that the evidence was insufficient to show negligence on the part of the defendant in failing to have the premises sufficiently lighted, because of the want of evidence that the defendant had either actual or constructive knowledge of such abnormal condition of the premises. No complaint is made that the defendant was guilty of negligence in not furnishing or providing proper or a sufficient number of lights. Its duty, of course, was a continuing one, and it was not only required to furnish sufficient lights in the first instance, but it was also required to exercise ordinary care to maintain the lights in repair and in reasonably good condition. The only evidence to charge the defendant with negligence in this respect was that at the time of the accident three or four lights along the track were out, and that the lamps on the motor did not burn, by reason of which the premises were insufficiently lighted. The other lights about the building were burning. What caused the lights to be out, or how long they had been out, is not shown; nor is it shown that the defendant had knowledge of such fact. There being no evidence that the defendant had actual knowledge that the lights were out, or were defective or out of repair, and there also

being no evidence to show how long they had been out, or what caused them to be out, and there being no other facts and circumstances shown from which a finding is authorized that the defendant, in the exercise of ordinary care, ought to have known that they were out, or in a defective condition and not likely to burn, or that it knew, or ought to have known, of the abnormal condition of the premises, no basis was furnished to authorize the conclusion that the defendant was guilty of negligence in such respect, unless it shall again be said that its negligence is sufficiently shown by the mere proof that the lights were out, and that the premises were not, for that reason, sufficiently lighted. To lay down such a rule is, in effect, to make the defendant an insurer. While it was not essential on the part of the plaintiff to show what caused the lights to be out, he nevertheless was required to show some facts or circumstances from which the conclusion is authorized that the lights were out and the premises left in darkness because of the defendant's want of ordinary care. The defendant was only chargeable with defects or abnormal conditions which were known, or ought to have been known to it in the exercise of ordinary care. If the plaintiff had introduced any evidence which fairly tended to show that the defendant had either actual or constructive knowledge that the lights were out, or in a defective condition, or that the premises were insufficiently lighted, the question as to its negligence in that respect would have been properly submitted to the jury. In the absence of such facts, the question ought to have been taken from the jury. (Labatt, Mast. & Serv., secs. 119, 139.)

We are also of the opinion that a verdict ought to have been directed for the defendant on the ground of plaintiff's assumption of risk. He stated that he was familiar with the condition of the premises and the work for which he was employed. He knew the lamps on the motor were not burning, and that three or four of the lights along the track were out. He knew the light was out about the place where he jumped from the motor and ran along the track. He knew it was dark, and that he could not distinctly see the

track. . He also testified that he knew pieces of rock and slag were scattered along the track and platform, and that they never were entirely free from such material, and that on this occasion there was more rock and slag scattered along the track than at other times. His knowledge of these things does not rest on inferences and deductions to be drawn from other facts and circumstances, but upon his own positive and direct testimony. If it shall be assumed that rock and slag of such character or quantity were scattered along the track as to ordinarily interfere with one passing along the track, the plaintiff must be held to know that one running along the track in the dark was likely to step on or stumble over some of it. In this connection, however, it is urged that an employee only assumes the perils and risks ordinarily incident to the employment, and that he does not assume the perils or risks occasioned by the negligence of his employer. It is frequently said that the servant has the right to presume that the master has used due diligence to provide a reasonably safe place in the operation of his business, and to enable the servant to perform his work with reasonable safety, and that he does not assume the risk of the employer's negligence in performing such duties. Such statement is, however, qualified with the further statement, unless the servant has knowledge that the duty has not been performed, and comprehends and appreciates the perils to which he is exposed, or that the attending danger is so obvious that such knowledge may be presumed. In the case of *Merrill v. Railroad,* 29 Utah 281, 81 Pac. 89 (110 Am. St. 695), we said: "In entering his employment the servant has the right to assume that the master has used ordinary care with respect to the performance of his primary and postive duties, and the servant does not assume the perils and risks occasioned by the negligence of the master in his failure to perform these duties, unless the servant has actual or presumptive knowledge that these duties have not been performed, and the perils and risks arising therefrom, and to which he is exposed, are known to him, or are so obvious that knowledge may be presumed, and with such knowledge

he accepted or continued in his employment without complaint or ·protest." This is but the statement of the law as announced in *Railroad Co. v. McDade,* 191 U. S. 68, 24 Sup. Ct. 24, 48 L. Ed. 96, and in *Railway v. Archibald,* 170 U. S. 671, 18 Sup. Ct. 777, 42 L. Ed. 1188, and the principle applied in the case of *Leach v. Railroad,* 29 Utah 285, 81 Pac. 90, 110 Am. St. 708.

The fact that the lights were out and the premises not sufficiently lighted were well known to plaintiff. He had full knowledge of the abnormal condition of the premises. The further question is: Did he know and appreciate the danger to which he was exposed in consequence of such conditions? To say that he did not is to say that he did not appreciate the ordinary consequences of running along the track in the dark knowing the condition of the premises, as testified to by him. True, the plaintiff was but sixteen years of age, and his comprehension and appreciation of danger is not to be measured by the standard of an adult, but by one of his age, capacity, and experience. It, however, ought to be conceded that there are consequences of some acts, and that there are some dangers, which an ordinarily intelligent sixteen-year-old boy would readily comprehend and appreciate. The plaintiff certainly appreciated the difference between light and darkness, and that the likelihood of slipping or stumbling while running in the dark was greater than if the premises had been properly lighted. If, again, it shall be assumed that the rock and slag with which the plaintiff came in contact were of such character as likely to cause one to stumble or slip, and that the defendant was chargeable with a breach of duty in failing to guard against such a danger by having the premises properly lighted, the consequences of running along the track in the dark with knowledge of the presence of the rock and slag is something of such a common and general experience that an ordinary sixteen year old boy would quite as readily comprehend as an adult. We do not see how reasonable minds could differ on such a question, or arrive at different conclusions. It, however, is further suggested that, though the plaintiff knew it

was dark, "he did not know that the defendant through its sweepers had neglected its duty, and failed to sweep the platform," and that plaintiff may have been prevented from appreciating the extent of the risk created by the insufficient lights, because of the loaded train following the motor upon which the plaintiff was, and because of his pressing duties. The difficulty with this suggestion is that the evidence does not support the premises upon which it is founded. If it had been made to appear that the plaintiff had no knowledge of the presence of the rock or slag along the track, it might be said that he had the right to assume that the track was clear of such obstructions, and that he was not chargeable with knowledge that he was exposed to such a danger; but, when a sixteen year old boy has actual knowledge of the existence of something, he, no more than an adult, may rightfully assume the absence of it. It may also be true that, because of pressing duties or other circumstances, one may not have in mind, at the moment, the existence of a danger previously known, or, because of necessary haste or excitement and confusion arising from emergencies, he may not at the time fully realize the danger to which he is exposed. The record, however, does not disclose such a state of facts. The plaintiff did not testify that he did not have in mind the presence of the rock or slag along the track, or that because of haste or confusion, or for any other reason, he did not realize or appreciate the danger to which he was exposed. His testimony, we think, shows quite the contrary.

We are therefore of the opinion that on both grounds urged by the appellant the case ought to have been taken from the jury.

The judgment of the court below is therefore reversed, and the cause remanded for a new trial; costs to appellant.

FRICK, J., concurs.

McCARTY, C. J. (concurring).

I concur in the reasoning of my Brethren and in the conclusions reached by them wherein they hold that the evidence was insufficient to support a finding by the jury that defend-

ant was negligent in failing to keep the premises in a reasonably safe condition, and that the court erred in overruling defendant's motion for a nonsuit; but I am not prepared to say that, if the evidence had shown that the lights went out and the premises became darkened through the negligence of defendant; and it had been shown that such negligence was the proximate cause of the accident and injuries complained of, plaintiff could not recover on the ground that he assumed the extra hazards and risks created by such negligence. The conclusions reached in the foregoing opinion that the evidence was insufficient to show negligence on the part of defendant in failing to keep the premises sufficiently lighted and the platform reasonably free from obstructions, in effect, dispose of the case, and the question as to whether plaintiff could be held to have assumed the risks caused by defendant's negligence, had negligence been shown, becomes, as I view the case, unimportant, and I therefore express no opinion on that point.