## LAUB v. SAN PEDRO, L. A. & S. L. R. CO.

No. 2729.    Decided Oct. 6, 1915.    (152 Pac. 467.)

MASTER AND SERVANT—ASSUMPTION OF RISK—APPARENT DANGER.
Plaintiff was employed as a fireman by the defendant. He was
required to check in on return from each trip. Incoming en-
gines were stopped over a cinder pit between the rails to re-
move cinders. Beside the track was an ash pit which was never
lighted. On the night of his injury plaintiff's engine stopped
beyond the pit; another engine being over the cinder pit. Plain-
tiff started to the roundhouse to check in, and fell into the ash
pit. He had always known of the location of the ash pit and
that it was never lighted, and he admitted that he knew he
might fall into the pit by going the way he did. *Held*, that he
could not recover, since he assumed that hazard of his employ-
ment, regardless of whether the danger was ordinarily incident
to it.[1]

Appeal from District Court, Third District; Hon. *Geo. G.
Armstrong,* Judge.

Action by Frank Laub against the San Pedro, Los Angeles
& Salt Lake Railroad Company, a corporation.

Judgment for plaintiff. Defendant appeals.

*Reversed,* with directions to grant new trial.

*Dana T. Smith* for appellant.

*Thos. Mitchell* for respondent.

McCARTY, J.

This is an action to recover for personal injuries alleged
to have been sustained by plaintiff through defendant's neg-
ligence in failing to guard and light an ash pit maintained

---

[1]*Faulkner* v. *Mammoth Min. Co.,* 23 Utah, 437, 66 Pac. 799; *Cook* v.
*Smelting Co.,* 34 *Utah,* 190, 97 Pac. 28; *Quibell* v. *U. P. Ry. Co.,* 7
Utah, 122, 25 Pac. 734; *Fritz* v. *Electric Light Co.,* 18 Utah, 493, 56
Pac. 90; *McCharles* v. *Mining Co.,* 10 Utah, 470, 37 Pac. 733; *Chris-
tienson* v. *R. G. W. Ry. Co.,* 27 Utah, 132, 74 Pac. 876, 101 Am. St.
Rep. 945.

by it in its yards at Milford, Utah. The case was tried to a jury, and a verdict was returned in favor of plaintiff. From the judgment entered on the verdict, defendant appeals.

The record discloses about the following facts: The injuries complained of were received by plaintiff on September 7, 1912, at about ten thirty p. m. The plaintiff, at the time of the accident, was, and for about two and one-half years prior thereto had been, in the employ of defendant as a locomotive fireman. On the day he was hurt plaintiff was, and for 18 months had been, operating between Milford and Newhouse. Defendant maintained among its many tracks at Milford two tracks, one of which was known as the outgoing, and the other as the incoming track. It was the custom for firemen when going to their work to go to the roundhouse and "register out," and then get onto the engines that were placed on the outgoing track by the hostler. On returning from a trip the engines would be brought into the yards on the incoming track under which there was a cinder pit about forty feet in length. Some of the engines consumed coal and others oil for fuel. The engines that burned coal were, on returning from a trip, stopped over the cinder pit, and the cinders which they had accumulated were dropped into the pit. Alongside of, and in close proximity to, the incoming track was another excavation about 200 feet in length, called the ash pit. This pit, starting from the level of the ground, ran on an incline until it reached a depth of four or five feet. These pits were not guarded, and at night were not lighted. The incoming tracks extended south of these pits about 300 feet. Except when the track was obstructed by one or more engines standing over the cinder pit or immediately south of it, it was customary for engines returning to the yard to pass over the pit and stop south of it, where the engine crew would leave the engine, go to the roundhouse, and register in. On the evening plaintiff was hurt the engine on which he was fireman was backed into the yards on the incoming track and was stopped north of the cinder pit. Another engine at that time was standing on the track at the north end of and partly over the pit. The engineer directed plaintiff to go to the roundhouse and tell the hostler to come

and get the engine, which was an oil burner. Plaintiff got off the engine, walked south along the east side of the track until he came to the engine standing on the north end of the cinder pit (the headlight of this engine had been in the meantime extinguished), and then turned west in the direction of the roundhouse and stepped into the ash pit and was injured. The ground for eight or ten feet east of the pit and contiguous to the track, and extending along and south of the cinder pit, was level and unobstructed. According to plaintiff's testimony, he had no difficulty in walking along that side of the track and by the cinder pit, and if he had continued along that side of the track until he passed the ash pit he would not have stepped or fallen into it. He testified that during the eighteen months he worked as fireman at Milford the ash pit was maintained in the same condition as it was on the night of the accident, and he knew that it was neither guarded nor lighted at night; that when he got off the engine on the occasion in question the pit was not lighted; that when he left the engine he started for the roundhouse to "register in" and to tell the hostler to come and get the engine.

"Q. When your engine came to a stop, you knew that you were alongside of this ash pit and close to the cinder pit, didn't you? A. Yes, sir. Q. You saw them there, and you saw they were not lighted? A. Yes, sir. Q. And you had never seen them lighted during the 18 months you were there? A. No. Q. And you saw that they were there and were unlighted on this occasion before you got off your engine? A. Yes."

He also testified that it was the practice when engines were brought in to stop them near the roundhouse south of the ash pit; that during the eighteen months he was employed at Milford he had never known until the night he was injured of an engine being stopped north of the ash pit; that if the engine had been stopped south of the ash pit he could have reached the roundhouse by going "straight across"; that it was his duty to register in a book that was provided in the engineers' room in the roundhouse when going out, and on the completion of every trip to go to the roundhouse and again register.

Appellant contends that respondent assumed the risks and hazards of the employment arising from the unguarded and unlighted condition of the ash pit, and that the motion for non-suit made at the conclusion of the evidence in chief should have been granted. The motion having been denied, it is further contended that the court should have granted appellant's request for a directed verdict. We think the contention is sound. The rule is well established that, when a servant enters upon or, without complaint, continues in a service with full knowledge and appreciation of dangers and hazards of the employment, and to which he, in the course of his employment, is exposed, he assumes the risk, and that, too, regardless of whether the dangers are ordinarily incident to and such as ordinarily arise out of the employment, or are abnormal and unusual. The general rule is well illustrated in 11 M. A. L. 396, in the following language:

"The risks which the servant is held to assume on acceptance of employment from the master are those ordinary and usual, open and obvious risks which are connected with the employment undertaken, in the manner and form in which it is being conducted by the master. * * * The servant also assumes and must bear the burden of perils subsequently arising, and which become known to him, and this is so whether such perils arise from defects and dangers ordinarily obvious or not." 3 Labatt, Mast. & Serv. (2d Ed.) section 1186a; 1 Shearman & Redfield Neg. (5th Ed.) 185; *Faulkner* v. *Mammoth Min. Co.*, 23 Utah, 437, 66 Pac. 799.

In this case the plaintiff was, and for eighteen months next preceding the night of the accident had been, familiar with the location of the ash pit with reference to the "incoming" track and knew that the pit was unguarded, and at night unlighted; and he admitted that he appreciated the danger of walking along and by the pit in the dark. On this point he testified in part as follows:

"Q. You stated that when you came into that yard you saw the ash pit and knew that it was unlighted? A. Yes. Q. All right. Then you did have reason to believe that if you went through the dark yard you might fall into the pit? A. Oh, yes."

We think it would be difficult to conceive of a plainer case of assumed risks.

In the case of *Cook* v. *Smelting Co.*, 34 Utah, 190, 97 Pac. 28, the facts were somewhat similar to the facts in this case, and the court, speaking through Mr. Justice Straup, says:

"The fact that the lights were out and the premises not sufficiently lighted was well known to plaintiff. He had full knowledge of the abnormal condition of the premises. The further question is: Did he know and appreciate the danger to which he was exposed in consequence of such conditions? To say that he did not is to say that he did not appreciate the ordinary consequences of running along the track in the dark knowing the condition of the premises, as testified to by him."

*Quibell* v. *U. P. Ry. Co.*, 7 Utah, 122, 25 Pac. 734, is another case in which it was claimed, and there was evidence to show, that the premises were insufficiently lighted. The court, in the course of the opinion, observes that:

"The plaintiff, when he had the same or equal means of knowledge with the defendant of such absence of proper light, and did not protest against the negligence now complained of, but continued in the employ of the company and worked without sufficient light, with knowledge, or with the means of knowledge, easily within his reach, which he could obtain by the reasonable exercise of his senses and sight, of the danger, he ought not to recover."

In the case of *Fritz* v. *Electric Light Co.*, 18 Utah, 493, 56 Pac. 90, the court said:

"For two weeks after this lever and the machine to which it was attached were left near the dynamo, the decedent, fully realizing the increased dangers and risks, if any, caused thereby, continued to work there as usual without complaint or objection. By thus continuing in the employment he assumed the increased risks, if any, that were created by the position of this lever. *Southern Pac. Co.* v. *Seley*, 152 U. S. 145 (14 Sup. Ct. 530, 38 L. Ed. 391), and cases cited; *McCharles* v. *Mining Co.*, 10 Utah, 470 (37 Pac. 733); *American Dredging Co.* v. *Walls* (84 Fed. 428), 28 C. C. A. 441."

We also invite attention to the case of *Christienson* v. *R. G. W. Ry. Co.*, 27 Utah, 132, 74 Pac. 876, 101 Am. St. Rep. 945; and *McDonnell* v. *Ill. Cent. Ry. Co.*, 105 Iowa, 459, 75 N. W. 336.

The case is reversed, with directions to the lower court to grant a new trial; appellant to recover costs.

STRAUP, C. J., and FRICK, J., concur.